Nabil A. KHABBAZ, Appellee,

v.

Lowell E. SWARTZ and Twila D. Swartz, Appellants.

Lowell E. SWARTZ and Twila D. Swartz, Appellants,

v.

IOWA STATE BANK & TRUST COMPANY, Third-Party Defendant-Appellee.

No. 66065.

Supreme Court of Iowa.

May 19, 1982.

Gary J. Streit, of Shuttleworth & Ingersoll, Cedar Rapids, for appellants.

John W. Hayek, of Hayek, Hayek & Hayek, Iowa City, for appellee.

L. Jay Stein, of Stein & Hibbs, Iowa City, for third-party defendant-appellee.

Considered by UHLENHOPP, P. J., and ALLBEE, McGIVERIN, LARSON, and SCHULTZ, JJ.

McGIVERIN, Justice.

Defendants Lowell E. and Twila D. Swartz, husband and wife, appeal from judgment rescinding an "Offer to Buy Real Estate and Acceptance," concerning sale of their personal residence entered into between themselves and plaintiff Nabil A. Khabbaz. The judgment also dismissed defendants' counterclaim seeking money damages, specific performance or forfeiture and their third-party petition for money damages against Iowa State Bank & Trust Company (ISB). The appeal raises three issues: 1) whether trial court erred in rescinding the contract; 2) whether defendants' counterclaim was properly dismissed; and 3) whether trial court properly dismissed the third-party petition which sought money damages from ISB due to the bank's withdrawal of a loan commitment to plaintiff. We find no error and therefore affirm.

The genesis of this contract dispute was the happenstance meeting of Lowell Swartz and Khabbaz on August 19, 1979.

Plaintiff had been offered a position as an associate professor at the University of Iowa. He was interested in buying a residential dwelling in Iowa City. He inquired at defendants' home concerning a vacant house for sale next door. After answering questions about the house next door, Swartz showed Khabbaz his own home and plaintiff became interested in purchasing the Swartz property. The parties could not agree on a price for the house.

The following evening, a sale price of $100,000 was orally agreed upon, subject to

some conditions. Although Swartz was willing to finance the purchase himself, plaintiff was unsure of his financial capacity to meet payments for the property and conditioned his willingness to purchase upon his ability to qualify for and obtain a conventional institutional real estate loan. He felt that if a bank found him credit-worthy and would lend him money for the home, his income must be sufficient to pay for the house. On Tuesday, August 21, Khabbaz and Lowell Swartz met with a real estate mortgage loan officer of ISB. Plaintiff made a written application for a loan. The bank subsequently gave him an oral commitment for a $65,000 loan, contingent upon the property being appraised at $100,000 or more.

On Wednesday, August 22, defendants had Thomas J. Cilek, an Iowa City attorney, draft the offer to buy contract at issue. The clause most important to our resolution of this case was paragraph 23, which provided:

SUBJECT TO FINANCING. This Offer to Buy is subject to Buyer obtaining a conventional real estate mortgage loan equal to 65% of the appraised value of the above described real estate with payments to be based upon a 20 year amortization with a Promissory Note which will become due and payable in five (5) years. If said financing is not obtained by September 5, 1979, this Offer to Buy shall be cancelled and all sums paid hereunder shall be refunded to Buyers.

Swartz delivered a copy of the proposed contract to plaintiff. The property was appraised at $106,000 on August 22.

On August 23, Lowell Swartz and plaintiff met at ISB and proceeded to the office of attorney Daniel W. Boyle who had agreed to counsel plaintiff. Boyle made several changes in the proposed contract, and advised plaintiff on the legal effect of the various clauses. After the parties mutually approved the changes, the contract, dated August 23, 1979, was signed by defendants and plaintiff. The closing and possession date was December 28, 1979.

On August 27, plaintiff received a written loan commitment from ISB for $65,000 at a 20 year amortization with a 5 year maturity. He accepted the commitment on August 29.

Before the transaction could be closed, it ran into difficulties. On October 22, 1979, ISB withdrew its loan commitment to Khabbaz after it was apprised that his gross income was not $3,000 each month, as it previously believed and as reflected by the loan application,[1] but $3,000 per month for nine months, or $2,250 per month on a twelve-month basis. On October 25, plaintiff advised defendants that because of the withdrawn loan commitment paragraph 23 had not been complied with, and that he therefore considered the contract cancelled and requested the return of sums paid under the contract. Defendants refused to release $8,000 that plaintiff had paid into an escrow fund to be held by ISB under the offer to buy until closing.

On November 11, 1979, plaintiff filed a petition at equity for rescission, declaratory judgment and injunctive relief.[2] Defendants counterclaimed for specific performance of the contract or money damages. Iowa R.Civ.P. 32. The counterclaim was subsequently amended to request forfeiture of plaintiff's interest in the contract. Defendants also filed a third-party petition for money damages against ISB on third-party beneficiary and estoppel grounds. Iowa R.Civ.P. 34.

After trial to the court, judgment was entered. Trial court found, inter alia: 1) Financing, a condition precedent pursuant to paragraph 23, was not obtained; 2) the withdrawal of the loan commitment was not done at plaintiff's request; and 3) defendants were not third-party beneficiaries of the loan commitment and therefore had

---

1. This misunderstanding appeared to be due to the fault of the bank. Plaintiff and Lowell Swartz both testified the loan officer had seen a letter that stated plaintiff's annual salary was $27,000.

2. Plaintiff alleged defendants had threatened forfeiture of the contract and sought a temporary injunction against such an action.

no standing to complain about its withdrawal or obtain damages resulting therefrom. The judgment: 1) rescinded the August 23, 1979, offer to buy contract; 2) ordered $8,000 in escrow returned to plaintiff; 3) dismissed defendants' counterclaim; and 4) dismissed the third-party petition against ISB. Defendants appealed.

I. *Rescission of contract.* Defendants contend trial court erred in "declaring the purchase contract entered into . . . on August 23, 1979, null and void." The crux of their theory is that the condition precedent contained in paragraph 23 had been fulfilled, and that both parties had a right to performance of the contract as soon as the other conditions of the contract were satisfied. We find that, although part of the condition precedent contained in paragraph 23 was met, part of it was not and that trial court properly declared the contract null and void.

Several principles apply in our review of an equitable rescission. Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7). Evidence to cancel or rescind a written instrument affecting real estate must be clear, satisfactory, and convincing. R. Hillman, *Contract Remedies, Equity, and Restitution in Iowa*, § 3.3(F) at 76 (1979); *see Novak Equipment, Inc. v. Hartl*, 168 N.W.2d 924, 927 (Iowa 1969) (conduct establishing rescission by mutual consent must be clear and unequivocal and be inconsistent with the existence of the contract); *cf. Poulsen v. Russell*, 300 N.W.2d 289, 299 (Iowa 1981) (party seeking reformation of written document must establish grounds for reformation by clear, satisfactory and convincing evidence); Iowa R.App.P. 14(f)(12) ("written instru-

ments affecting real estate may be set aside only upon evidence that is clear, satisfactory and convincing.").

■ "A petition for the cancellation of a contract by a court of equity is directed to the sound discretion of that court exercised in the light of general equitable principles." *Binkholder v. Carpenter*, 260 Iowa 1297, 1304, 152 N.W.2d 593, 598 (1967). The maxim that one who seeks equity must do equity applies in actions for rescission and is reflected in the requirement that the plaintiff, as a condition of obtaining a rescission, must ordinarily restore the defendant to the position he occupied before the transaction. *Id.* at 1306, 152 N.W.2d at 598–99; 13 Am. Jur.2d *Cancellation of Instruments*, § 2 at 498 (1964); *Hillman*, § 3.3(F) at 75. We find that plaintiff in fact has done equity and that defendants' status quo has been restored.[3] Defendants remained in possession of and occupied the realty at all material times. Upon our de novo review we find clear, satisfactory and convincing evidence supporting trial court's conclusion that the purchase contract was null and void.

■ Defendants maintain that paragraph 23 was satisfied when plaintiff accepted the loan commitment from ISB on August 29, 1979, notwithstanding the withdrawal of the commitment by ISB on October 22. Plaintiff's position, which trial court adopted, was that paragraph 23 required plaintiff to obtain a conventional mortgage loan. As drafted, paragraph 23 is ambiguous. Therefore trial court could and we, in our de novo review, can use parol evidence in interpreting the contract. *Snider v. Fisk*, 218 N.W.2d 652, 654 (Iowa 1974) ("parol evidence is competent to show that the written instrument was delivered upon certain conditions"); Iowa R.App.P. 14(f)(14).

---

**3.** The restoration of status quo here is parallel to that in *Voorhees v. Baier*, 194 Iowa 1320, 1329–30, 191 N.W. 125, 129 (1922): "There was nothing, under the circumstances, required on the part of the appellees to restore the *status quo*. They had received nothing whatever under the contract, neither title nor possession. They had nothing but the outstanding, unre-

corded executory contract, upon which the appellant had himself served notice of forfeiture. The situation did not call for any affirmative act on the part of the appellees before the service of their notice of rescission of the contract. They had nothing to restore before they made rescission." (Emphasis in original).

Paragraph 23 actually established two conditions precedent. "Conditions precedent are . . . those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Mosebach v. Blythe*, 282 N.W.2d 755, 759 (Iowa App. 1979); 3A *Corbin on Contracts*, § 628 at 16 (1960); *see* 5 S. Williston, *A Treatise on the Law of Contracts*, § 666A at 141–44 (Jaeger ed. 1961). "A determination that a condition precedent exists depends not on the particular form of words used, but upon the intention of the parties gathered from the language of the entire instrument." *Davis & Co. v. Cobban*, 39 Iowa 392, 393 (1874); *Mosebach*, 282 N.W.2d at 759.

A. *One condition precedent met.* The second sentence of paragraph 23 provided: "If said financing is not obtained by September 5, 1979, this Offer to Buy shall be cancelled and all sums paid hereunder shall be refunded to Buyers." ISB made a written loan commitment to plaintiff on August 27, 1979. Plaintiff accepted the commitment on August 29, 1979.[4] We assume without deciding that the condition precedent established by the second sentence of paragraph 23 was met as of September 5, 1979.

B. *Second condition precedent failed.* However, the first sentence of paragraph 23 established a condition precedent which was not met: "This Offer to Buy is subject to Buyer obtaining a conventional real estate mortgage loan equal to 65% of the appraised value of the above described real estate with payments to be based upon a 20 year amortization with a Promissory Note which will become due and payable in five (5) years."[5]

Parol evidence disclosed that "conventional real estate mortgage loan" meant a loan from a financial institution such as a bank or savings and loan association. Plaintiff required an institutional loan to assure himself that by objective standards a lender believed he would have enough money to afford the house. Harry Biggers, the ISB real estate mortgage loan officer, and Duane Swartzendruber, vice-president of First Federal Savings and Loan Association in Iowa City, testified that financial institutions have a guideline for analyzing whether money will be lent to a loan applicant for the purpose of purchasing residential real estate. The guideline is twofold: 1) that the principal, interest, taxes and insurance (PITI) obligation per month does not exceed 25% of the applicant's monthly gross income; and 2) that the PITI obligation plus any long-term (over 12 months in duration) debt obligation per month does not exceed 33% of monthly gross income.[6] The guideline serves to help the financial institution determine the ability of the applicant to repay the loan.

In August, when Biggers had the impression that plaintiff's monthly income was $3,000, ISB approved a $65,000 loan even though the loan exceeded both the 25 and

4. For a discussion on: 1) the degree to which loan commitments are binding upon the lender; 2) how loan commitments affect real estate sales commissions or loan origination fees; and 3) the controlling nature of the contractual language, see, e.g., *Dubin Weston, Inc. v. Louis Capano & Sons, Inc.*, 394 F.Supp. 146, 154–55 (D.Del.1975); *Lowe v. Massachusetts Mutual Life Ins. Co.*, 54 Cal.App.3d 718, 723–26, 127 Cal.Rptr. 23, 25–26 (1976); *Sorenson v. Connelly*, 36 Colo.App. 168, 170–71, 536 P.2d 328, 330 (1975); *Barton v. Scott Hudgens Realty & Mortgage, Inc.*, 136 Ga.App. 565, 566–67, 222 S.E.2d 126, 127–28 (1975); *Johnston v. State Bank*, 195 N.W.2d 126, 127–29 (Iowa 1972); *Bushmiller v. Schiller*, 35 Md.App. 1, 2–10, 368 A.2d 1044, 1045–48 (1977); *Leben v. Nassau*

*Savings and Loan Ass'n.*, 40 A.D.2d 830, 830–31, 337 N.Y.S.2d 310, 311–12 (1972), *aff'd*, 34 N.Y.2d 671, 312 N.E.2d 180, 356 N.Y.S.2d 46 (1974).

5. Plaintiff did not raise on appeal, as a ground for rescission, the failure to obtain a conventional real estate mortgage loan for 65% of the appraised value. The loan commitment was for $65,000. The appraised value of the property was $106,000.

6. Biggers testified that ISB used 35% for the second figure and that banks were more flexible with the standards than savings and loan associations.

284

33% guidelines.[7] On October 22, 1979, when Biggers realized plaintiff's monthly gross income was only $2,250, ISB withdrew its loan commitment because the guidelines were far exceeded. Plaintiff could not have borrowed $65,000, much less 65% of the appraised value, from any financial institution in Johnson County which employed the guidelines. The evidence showed it was not possible for Khabbaz to perform or obtain the condition precedent established by the first sentence of paragraph 23 of the offer to buy contract by actually getting such a loan in Johnson County.

Nonperformance of a condition precedent vitiates a contract or a proposed contract. *Bruggemeyer v. Bruggemeyer*, 258 N.W.2d 364, 366 (Iowa 1977). Thus, rescission was proper in this case. If an offer to buy and sell real estate is conditioned upon the purchaser obtaining a loan, failure to obtain the loan renders the contract null and void. *Mullenger v. Clause*, 178 N.W.2d 420, 426–29 (Iowa 1970); *Kruger v. Soreide*, 246 N.W.2d 764, 769 (N.D. 1976). This is precisely what has happened in the present case. Paragraph 23 required an institutional, conventional real estate mortgage loan. It was not and could not be obtained. Trial court properly rescinded the contract and ordered return of the escrowed $8,000 to plaintiff.

II. *Dismissal of counterclaim.* Defendants contend trial court erred in dismissal of their counterclaim for money damages, specific performance or forfeiture. Because we have concluded, in Division I, that the contract was properly rescinded, it follows that defendants' counterclaim was properly dismissed. Their second assignment of error is without merit.

III. *Dismissal of third-party petition.* Defendants contend trial court erred by dismissing their third-party petition against ISB. They argue that they were creditor beneficiaries of the loan commitment between plaintiff and ISB and are therefore entitled to money damages stemming from the withdrawal of the loan commitment by ISB. In the alternative, they argue that ISB is equitably estopped from withdrawing the loan commitment. We find no error in the dismissal of the third-party petition.

A. *Third party beneficiary.*

[I]n order to have standing to assert a breach of contract, a party not privy to such contract must be regarded as a direct beneficiary to the contract, and not as an incidental beneficiary. That is, he must be regarded as either a donee beneficiary or a creditor beneficiary, as those terms are defined in Restatement, Contracts, Section 133, in order to recover damages flowing from breach of a contract to which he was not a party.

*Peter Kiewit Son's Co. v. Iowa Southern Utilities Co.*, 355 F.Supp. 376, 392 (S.D.Iowa 1973).

Where performance of a promise in a contract will benefit a person other than the promisee, that person is ... (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary; (b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary....

*Olney v. Hutt*, 251 Iowa 1379, 1386, 105 N.W.2d 515, 519 (1960); *Restatement, Con-*

7. Plaintiff's PITI obligation on the $65,000 loan was approximately $845.92. He also had a long-term support obligation to his ex-wife and children of $350 per month. At $3,000 per month gross income, the PITI obligation was 28%, and PITI plus long-term debt was 40%. At $2,250 per month, the PITI obligation swelled to 38% of gross income, and PITI plus long-term debt was 53%.

*tracts*, § 133 at 151 (1932).[8] An incidental beneficiary is a person benefitted by the performance of a contract who is neither a creditor or donee beneficiary. *Id.* Incidental beneficiaries cannot claim any right to the performance of a contract between other parties. *Johnson Farm Equipment Co. v. Cook*, 230 F.2d 119, 124 (8th Cir. 1956).

■ In order to enforce a contract, the third party beneficiary must show that the contract was made for his express benefit. *Olney*, 251 Iowa at 1384–85, 105 N.W.2d at 519; 2 S. Williston, *A Treatise on the Law of Contracts*, § 356A at 836 (Jaeger ed. 1959) (" 'the authorities are in accord that one suing as a third party beneficiary has the burden of showing that the provision was for his direct benefit' and unless he can sustain this burden, he will not be permitted to sue on the agreement."). "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." [9] *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642, 645 (Iowa 1973), *cert. denied*, 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974).

■ In the present case defendants have not carried the burden of showing the loan commitment was made for their express benefit. The language of the loan commitment and the surrounding facts overwhelmingly indicate defendants are incidental beneficiaries at best. The loan commitment itself does not expressly undertake to do anything for defendants. *See Peter Kiewet*, 355 F.Supp. at 932. "There is no language in the [loan commitment] which could be construed reasonably to show an intent of the parties to confer a direct benefit upon [defendants]". *Id.* The fact that defendants received a copy of the cover letter to the loan agreement was due to their request for such, not by an intent of plaintiff and ISB to benefit them. Defendants did not receive a copy of the loan commitment agreement.

Henry Bigger testified that the reason the address of defendants' property was on the loan commitment was to direct the appraiser to the appropriate location. He also testified that plaintiff was not bound to use the loan to purchase defendants' property. The loan proceeds could have been used to purchase any property with equal or higher appraised value.[10] Plaintiff testified that he did not intend to benefit defendants when he applied for the loan.

Defendants are incidental beneficiaries of the loan commitment between plaintiff and ISB. This conclusion is supported by decisions in other jurisdictions. *See, e.g., Payne v. United States*, 336 F.Supp. 1008, 1009 (S.D.Tex.1971) (FHA mortgage insurance commitment to purchaser never consumated; seller's benefit incidental); *Irwin v. Murphey*, 81 Ariz. 148, 149–54, 302 P.2d 534, 535–38 (1956) (masonry contractor inciden-

---

**8.** The *Restatement (Second) of Contracts*, § 302 (1981), rejects the distinction between donee and creditor beneficiaries. "Since the terms 'donee' beneficiary and 'creditor' beneficiary carry overtones of obsolete doctrinal difficulties, they are avoided in the statement of rules in this Chapter." *Restatement (Second) of Contracts*, Chapter 14 introductory note at 439 (1981).

Williston was of a contrary opinion: "Any attempt to reduce to a single governing principle the case of the donee beneficiary and that of the creditor beneficiary is not only doomed to failure but is an inevitable source of confusion." 2 S. Williston, *A Treatise on Law of Contracts*, § 356A at 839 (Jaeger ed. 1959).

**9.** It may be appropriate to look only at the intent of the promisee. "It is the intent or purpose of the promisee who pays for the promise that has been generally looked upon as governing." 2 S. Williston, *Law of Contracts*, § 356A at 836. "In third party cases, the right [of the third party beneficiary] does not depend upon the purpose, motive, or intent of the promisor. The motivating cause of his making the promise is usually his desire for the consideration given by the promisee." 4 *Corbin on Contracts*, § 776 at 16 (1951).

**10.** The present case resembles example 9 to *Restatement of Contracts* § 133: "B promises A for sufficient consideration to pay whatever debts A may incur in a certain undertaking. A incurs in the undertaking debts to C, D and E. If, on a fair interpretation of B's promise, the amount of the debts is to be paid by B to C, D and E, they are creditor beneficiaries; if the money is to be paid to A in order that he may be provided with money to pay C, D and E, they are at most incidental beneficiaries."

tal beneficiary to building loan agreement); *Apex Siding & Roof. Co. v. First Federal Sav. & L. Ass'n*, 301 P.2d 352, 354–55 (Okl. 1956) (roofing contractor which repaired property in reliance on loan commitment that was never consumated found to be incidental beneficiary); *Stephens v. Great Southern Sav. & L. Ass'n*, 421 S.W.2d 332, 333–36 (Mo.App.1967) (paving contractor found to be incidental beneficiary of unconsummated loan agreement for paving streets in subdivision); *Burns v. Washington Savings*, 251 Miss. 789, 793–99, 171 So.2d 322, 323–26 (1965) (vendor of homes denied third party beneficiary status to unconsummated loan commitments to purchasers; vendor had received written notice of commitments).

Since under this record they were incidental beneficiaries, defendants had no right to enforce the loan commitment. The court did not err to the extent it dismissed the third-party petition on third-party beneficiary grounds.

 B. *Estoppel.* Defendants also claim ISB is equitably estopped from withdrawing its loan commitment to plaintiff and that, therefore, the court erred in dismissing the third-party petition. We do not agree. In order to constitute equitable estoppel, or estoppel in pais, four elements must be shown: 1) false representation or concealment of material facts must exist; 2) the party to whom it was made must have been without knowledge of the real facts; 3) that representations or concealment must have been made with the intention that it should be acted upon; and 4) the party to whom it was made must have relied thereon to his prejudice and injury. There can be no estoppel in any event, if any of these elements are lacking. *Halvorson v. City of Decorah*, 258 Iowa 314, 320, 138 N.W.2d 856, 861 (1965); *Axtell v. Harbert*, 256 Iowa 867, 872, 129 N.W.2d 637, 639–40 (1964); *Stookesberry v. Burgher*,

220 Iowa 916, 921–22, 262 N.W. 820, 823 (1935).

■ There is an utter failure to show the first two elements in this case.[11] There is therefore no ground from the standpoint of the defendants on which to estop ISB from withdrawing the loan commitment.

Trial court properly dismissed the third-party petition.

We have considered all of the parties contentions, even though not specifically discussed. Because we find no error in trial court's judgment, it is affirmed in all particulars: the contract of August 23, 1979, is null and void; defendants' counterclaim and third-party petition are dismissed; and the funds held in escrow by ISB shall be returned to plaintiff.

AFFIRMED.

---

**11.** Neither have defendants met the three prong equitable estoppel test set out in *Colthurst v. Colthurst*, 265 N.W.2d 590, 598 (Iowa 1978) ("(1) a clear and definite oral agreement; (2) that [defendant] acted to his detriment solely on said agreement; and (3) that a weighing

of all the equities entitles [defendant] to the equitable relief of estoppel.").

We recently discussed estoppel in *Travelers Indemnity Co. v. Fields*, 317 N.W.2d 176, 187–88 (Iowa 1982).