James C. BAIN, Plaintiff-Appellee,

v.

John GILLISPIE and Karen Gillispie, d/b/a Hawkeye John's Trading Post, Defendant-Appellant.

No. 83–1522.

Court of Appeals of Iowa.

Sept. 6, 1984.

As Amended Sept. 18, 1984.

Marc Moen and John T. Nolan of Rate, Nolan, Bohanan, Moen & Lucas, and Jay H. Honohan of Honohan, Epley, Kron & Haymond, Iowa City, for defendants-appellants.

Cheryl Weber and David J. Dutton of Mosier, Thomas, Beatty, Dutton, Braun & Staack, Waterloo, for plaintiff-appellee.

Melvin S. Narol of Jamieson, McCardell, Moore, Peskin & Spicer, Princeton, N.J., for amicus curiae National Association of Sports Officials.

Heard by SNELL, P.J., and HAYDEN, and SACKETT, JJ.

SNELL, Presiding Judge.

James C. Bain serves as a referee for college basketball games. During a game which took place on March 6, 1982, Bain called a foul on a University of Iowa player which permitted free throws to a Purdue University player. That player scored the point that gave Purdue a last-minute victory. Some fans of the University of Iowa team blamed Bain for their team's loss, asserting that the foul call was clearly in error.

John and Karen Gillispie operate a novelty store in Iowa City, specializing in University of Iowa sports memorabilia. The store is known as Hawkeye John's Trading Post. Gillispie's business is a private enterprise for profit having no association with the University of Iowa or its sports program.

A few days after the controversial game, Gillispies began marketing T-shirts bearing a reference to Bain. It showed a man with a rope around his neck and was captioned "Jim Bain Fan Club." On learning of it, Bain sued Gillispies for injunctive relief, actual and punitive damages. Gillispies counterclaimed, alleging that Bain's conduct in officiating the game was below the standard of competence required of a professional referee. As such, it constituted malpractice which entitles Gillispies to $175,000 plus exemplary damages. They claim these sums because Iowa's loss of the game to Purdue eliminated Iowa from the championship of the Big Ten Basketball Conference. This in turn destroyed a potential market for Gillispies' memorabilia touting Iowa as a Big Ten champion. Their claim for actual damages is for loss of earnings and business advantage, emotional distress and anxiety, loss of good will, and expectancy of profits. Exemplary damages are asked because Bain's calls as a referee were baneful, outrageous, and done with a heedless disregard for the rights of the Gillispies.

The trial court found the Gillispies had no rights and sustained a motion for summary judgment dismissing Gillispies' counterclaim. They appeal, contending the trial court erred in finding no genuine issue of material fact. The triable issues claimed are: 1) that Gillispies' damages were a reasonably foreseeable consequence of Bain's acts as a referee, or 2) that Gillispies are beneficiaries of an employment contract between Bain and the Big Ten Athletic Conference.

■ In reviewing the propriety of granting summary judgment as to the counterclaim, our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Frohwein v. Haesemeyer*, 264 N.W.2d 792, 796 (Iowa 1978). We are to view the underlying facts in the light most favorable to the party opposing the motion and to reverse if it appears from the record that there is an unresolved issue of material fact. *Id.* at 795–96.

In addition to the parties' briefs, the National Association of Sports Officials (NASO) has filed a motion to appear as amicus curiae and to file a brief on behalf of appellee Bain. NASO is an association of sports officials who officiate sports at all levels of competition. It has approximately 9000 members residing in all 50 states. We have granted the motion and considered the brief.

■ Turning first to the negligence claim, the Gillispies argue that there was an issue of material fact of whether their damages were the reasonably foreseeable consequence of Bain's action. A prerequisite to establishing a claim of negligence is the existence of a duty. *Larsen v. United Fed. Sav. & Loan Ass'n.*, 300 N.W.2d 281, 285 (Iowa 1981); *Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979). Negligence is the breach of legal duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks. *Lewis v. State*, 256 N.W.2d 181, 188 (Iowa 1977). It has been defined as conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Restatement, (Second) of Torts §§ 281, 286. The standard established by the law is foreseeability of harm or probability of injury. "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." Justice Cardozo in *Palsgraf v. Long Island Ry. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). The law's standard is one of reasonable foresight, not prophetic vision. *See* 57 Am.Jur.2d *Negligence*, §§ 57–62 (1971).

■ "The question of whether a duty arises out of a parties' relationship is always a matter of law for the courts." *Soike v. Evan Mathews and Co.*, 302 N.W.2d 841, 843 (Iowa 1981). Applying these maxims to Gillispies' tort claim, we find the trial court properly granted the summary judgment against the claim. It is beyond credulity that Bain, while refereeing a game, must make his calls at all times perceiving that a wrong call will injure Gillispies' business or one similarly situated and subject him to liability. The range of apprehension, while imaginable, does not extend to Gillispies' business interests. Referees are in the business of applying rules for the carrying out of athletic contests, not in the work of creating a marketplace for others. In this instance, the trial court properly ruled that Bain owed no duty. Gillispies have cited no authority, nor have we found any, which recognizes an independent tort for "referee malpractice." Absent corruption or bad faith, which is not alleged, we hold no such tort exists. *Compare: Smith v. State*, 324 N.W.2d 299, 300 (Iowa 1982); *see also Georgia High School Association v. Waddell*, 248 Ga. 542, 543, 285 S.E.2d 7, 8–9 (1981); *Shapiro v. Queens County Jockey Club*, 184 Misc. 295, 300, 53 N.Y.S.2d 135, 138–39 (1945). As the trial court properly reasoned:

This is a case where the undisputed facts are of such a nature that a rational fact finder could only reach one conclusion— no foreseeability, no duty, no liability. Heaven knows what uncharted morass a court would find itself in if it were to

hold that an athletic official subjects himself to liability every time he might make a questionable call. The possibilities are mind boggling. If there is a liability to a merchandiser like the Gillispies, why not to the thousands upon thousands of Iowa fans who bleed Hawkeye black and gold every time the whistle blows? It is bad enough when Iowa loses without transforming a loss into a litigation field day for "Monday Morning Quarterbacks." There is no tortious doctrine of athletic official's malpractice that would give credence to Gillispie's counterclaim.

■ The trial court also found that there was no issue of material fact on the Gillispies' claim that they were beneficiaries under Bain's contract with the Big 10. Gillispies argue that until the contract is produced, there exists a question of whether they are beneficiaries. There is some question of whether there is a contract between Bain and the Big 10. In his response to interrogatories, Bain stated that he had no written contract with the Big 10, but that there was a letter which defined "working relationship." Although this letter was never produced and ordinarily we would not decide an issue without the benefit of examining the letter's contents, we nevertheless find the issue presently capable of determination. By deposition Gillispies answered that there was no contract between them and Bain, the Big 10 Athletic Conference, the University of Iowa, the players, coaches, or with any body regarding this issue. Thus, even if the letter were considered a contract, Gillispies would be considered third-party beneficiaries. Because Gillispies would not be privy to the contract, they must be direct beneficiaries to maintain a cause of action, and not merely incidental beneficiaries. *Khabbaz v. Swartz*, 319 N.W.2d 279, 284 (Iowa 1982).

■ A direct beneficiary is either a donee beneficiary or a creditor beneficiary. *Id.* In *Olney v. Hutt*, 251 Iowa 1379, 105 N.W.2d 515 (1960), the Iowa Supreme Court defined these terms as follows:

(1) Where performance of a promise in a contract will benefit a person other than the promisee that person is, * * * (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promisee to the beneficiary; (b) a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary.

*Id.* at 1386, 105 N.W.2d at 519.

■ Gillispies make no claim that they are creditor beneficiaries of Bain, the Big 10 Athletic Conference, or the University of Iowa. "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Bailey v. Iowa Beef Processors, Inc.*, 213 N.W.2d 642, 645 (Iowa 1973), *cert. denied* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974). It is clear that the purpose of any promise which Bain might have made was not to confer a gift on Gillispies. Likewise, the Big 10 did not owe any duty to the Gillispies such that they would have been creditor beneficiaries. If a contract did exist between Bain and the Big 10, Gillispies can be considered nothing more than incidental beneficiaries and as such are unable to maintain a cause of action. *Olney v. Hutt*, 251 Iowa 1379, 1386, 105 N.W.2d 515, 518 (1960).

Consequently, there was no genuine issue for trial which could result in Gillispies obtaining a judgment under a contract theory of recovery. The ruling of the trial court sustaining the summary judgment motion and dismissing the counterclaim is affirmed.

AFFIRMED.