# IN THE COURT OF APPEALS OF IOWA

No. 17-0882
Filed August 15, 2018

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ROBERT POWELL JR.,**
     Defendant-Appellant.

_____

     Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter (plea & sentencing) and Michael J. Shubatt (motion to withdraw), Judges.

     Robert Powell Jr. appeals the judgments and sentences entered following his guilty plea. **AFFIRMED.**

     Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

     Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

     Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

Robert Powell Jr. appeals the judgments and sentences entered following his guilty plea, alleging his trial counsel was ineffective. *See State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009) (noting that although a guilty plea waives all defenses that are not intrinsic to the plea, a defendant may "challenge the validity of his guilty plea by proving the advice he received from counsel in connection with the plea was not within the range of competence demanded of attorneys in criminal cases"). We review ineffective-assistance claims de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To succeed on an ineffective-assistance claim, a defendant must show counsel failed to perform an essential duty and this failure resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Straw*, 709 N.W.2d at 133.

Powell was facing multiple charges in four criminal cases when he reached a plea agreement with the State.[1] Powell agreed to plead guilty to charges of domestic abuse assault impending air flow causing bodily injury and domestic abuse assault causing bodily injury as a second offender in case number

---

[1] The document signed by Powell, his attorney, and the prosecutor, is entitled "Memorandum of Plea Negotiations (B)." Regardless of its title, we regard the document as a guilty plea agreement (if it looks like a duck, if it swims like a duck, if it quacks like a duck, then it probably is a duck). *See Neill v. Western Inns, Inc.*, 595 N.W.2d 121, 126 (Iowa 1999) ("[T]he designation given a pleading is not determinative; rather, the content of the pleading identifies its essential character."); *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) ("We treat a motion by its contents, not its caption."). It begins, "COMES NOW the State of Iowa and the Defendant and hereby submit the following plea negotiations to the Court." The document indicates: "The Defendant will enter a plea of guilty to the following charge(s):" and lists the charges to which Powell agreed to plead guilty. It lists the charges to be dismissed, and also indicates the sentences that the State agreed to recommend. The document further states: "The Defendant **will/not** join in that recommendation." It also states: "The negotiations are contemplated to be **binding/non-binding** on the court," but neither "binding" nor "non-binding" is crossed- or lined-out.

FECR120371, child endangerment and domestic abuse assault as a second offender in case number AGCR120456, assault in case number SMCR120621, and a probation revocation. In exchange, the State agreed to dismiss a charge of domestic abuse assault causing bodily injury as a second offender in case number FECR120371 and a charge of second-degree harassment in case number SMCR120621. The State also agreed to recommend suspended sentences on the convictions in case numbers FECR120371 and AGCR120456, thirty days in jail on the assault conviction in case number SMCR120621, and one year at a residential treatment facility in relation to Powell's probation revocation. Central to this appeal, paragraph ten of the agreement states: "Should the Defendant receive any additional law violations before sentencing, these plea negotiations will be null and void."[2]

The court accepted Powell's guilty plea and scheduled a sentencing hearing. However, before sentencing, Powell violated a no-contact order and the conditions of his pretrial release. The court found Powell to be in contempt and sentenced him to 120 days in jail.

Prior to sentencing, Powell filed a pro se motion to withdraw his guilty plea, arguing he did not understand the terms of the plea agreement and his counsel coerced him to enter into it. The court appointed Powell new counsel. Following a hearing on the motion, the court entered an order stating: "Since the parties presented no evidence, the Court has no factual basis to support [Powell]'s

---

[2] Presumably, "these plea negotiations" is reference to the resultant plea agreement reached between Powell and the State, for it is the agreement—not the negotiations leading up to the agreement—that is relevant.

request.  Accordingly, the motion to withdraw plea is denied."  Noting that Powell's motion appeared to attack the validity of his plea, the court also addressed it as a motion in arrest of judgment, but it found Powell failed to demonstrate that his plea was invalid and denied the motion.

At sentencing, the prosecutor informed the court that the State was "exercising its right to ask that a recommendation be null and void" based on the contempt finding.  The prosecutor recommended the court send Powell to prison and not to a residential treatment facility.  The court declined and instead sentenced Powell to consecutive prison terms totaling eleven years, suspended the sentences, and ordered Powell to reside at a residential treatment facility for one year—just as the State had originally recommended in the plea agreement.

On appeal, Powell alleges his replacement trial counsel was ineffective in failing to argue at the hearing on the motion to withdraw his plea that his violation of the no-contact order voided the plea agreement.  He asks that we vacate his convictions, judgments, and sentences and remand the case to allow him to withdraw his plea to return him to the position he would have been in before entering his guilty plea.[3]

Powell argues application of paragraph ten of the memorandum nullifies his agreement with the State, thus "alleviating *both* parties of their duties under the contract."  (Emphasis ours).  He points out the paragraph ten "null and void" language differed from the paragraph seven language, which provides: "The State

---

[3] Of course, setting aside the plea would allow the State to reinstate any charges dismissed in contemplation of a valid plea bargain and file any additional charges supported by the available evidence.  *See State v. Weitzel*, 905 N.W.2d 397, 411 (Iowa 2017).

is not bound to this agreement if the Defendant fails to appear for sentencing as ordered." Powell posits that "[i]f the parties intended that only the State was released from its obligations under the agreement if Powell incurred a law violation, the language of [paragraph ten] and [paragraph seven] would have been identical." At first blush, the argument is attractive and makes sense. But, as so often is the case in the law, words do not always mean what they appear to say.

The parties have not provided us with any case law, nor has our own independent research dredged up any Iowa appellate case interpreting a "null and void" guilty plea agreement provision like the one at issue here. So, for the reasons that follow, we use general contract principles to help us navigate through uncharted waters.

A plea agreement is akin to a contract. *See Boge v. State*, 309 N.W.2d 428, 430 (Iowa 1981); *see also State v. Ceretti*, 871 N.W.2d 88, 97 (Iowa 2015) (noting other jurisdictions "apply principles of contract law" when fashioning the appropriate disposition following the vacation of an entire plea agreement); *State v. Smith*, 753 N.W.2d 562, 563 (Iowa 2008) (noting district court invalidated an entire plea agreement because the agreement was "akin to a contract"); *State v. Horness*, 600 N.W.2d 294, 298 (Iowa 1999) (discussing breach of plea agreement).

> Where a plea agreement has been accepted by the court, we generally interpret the meaning of the terms in the agreement according to basic principles of contract law. This is because plea agreements are *like* contracts, and so contract principles provide a *useful means by which to analyze* their enforceability. We also recognize, however, that plea agreements are not contracts, and therefore contract doctrines do not always apply to them.

*United States v. Ritchison*, 887 F.3d 365, 369 (8th Cir. 2018) (cleaned up)[4]; *accord United States v. Hanshaw*, 686 F.3d 613, 615 (8th Cir. 2012) ("Because plea agreements are contractual in nature we must interpret them according to general contractual principles." (cleaned up)).

In contract law, the phrase "null and void" is sometimes interpreted to mean the contract is "voidable." *See, e.g.*, *Fletcher v. United States*, 303 F. Supp. 583, 586 (N.D. Ind. 1967) ("'Null and void' as here used means that the contract is voidable at the election of the seller."); *Metro. Life Ins. Co. v. Hall*, 12 S.E.2d 53, 60-61 (Ga. 1940) ("[W]e think the phrase 'null and void' should be construed to mean voidable."); *Becker v. Becker*, 416 A.2d 156, 162 (Vt. 1980) (construing the words "null" and "void" "to mean voidable only"); *Marshall v. Porter*, 80 S.E. 350, 351 (W. Va. 1913) ("We do not think the words 'null and void' should be construed literally. When these words are employed in contracts of this kind they are generally construed to mean that the contract is voidable at the election of the party in whose favor they were inserted, in this case the vendor. It is evident from their conduct that these words in the contract were so construed by the parties thereto." (citing 5 Words and Phrases, 4867)); *see also generally Khabbaz v. Swartz*, 319 N.W.2d 279, 284 (Iowa 1982) (finding "null and void" a conditional offer to buy and sell where the purchaser failed to satisfy the requisite condition—obtaining a traditional loan—and holding rescission of the contract and return of buyer's escrowed money was proper, putting the parties back at their starting point). This

---

[4] "Cleaned up" is a new parenthetical used to indicate that internal quotation marks, alterations, and citations have been omitted from quotations for readability purposes. *See United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2018); Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (Fall 2017).

is because the terms "void" and "voidable" are oftentimes used interchangeably, as explained in Black's Law Dictionary:

> Again the word "void" has been used, even by judges and the framers of statutes, where "voidable" is meant.  One illustration will suffice.  By 17 Geo. III, c. 50, failure to pay certain duties at an auction is stated to make a bidding 'nul and void to all intents,' but this does not entitle a purchaser who has repented of his bargain to avoid the contract by his own wrong, that is by refusal to pay the statutory duty.  The contract is voidable at the option of the party who has not broken the condition imposed by law.

*Contract – void contract*, Black's Law Dictionary (10th ed. 2014) (quoting William R. Anson, *Principles of the Law of Contract* 20-21 (Arthur L. Corbin ed., 3d Am. ed. 1919)); *see also* 17A Am. Jur. 2d Contracts § 9 (Westlaw 2018) ("There is an important distinction between 'void' and 'voidable' contracts, and confusion has resulted from the fact that a contract is sometimes said to be void although it is only voidable.  Because a voidable contract continues in effect until active steps are taken to disaffirm the contract and because a void contract is wholly ineffective from the outset, the distinction is significant."); 17A C.J.S. *Contracts* § 169 (Westlaw 2018) ("A contract that is void never attains legal effect as a contract and cannot be enforced, whereas a contract that is voidable is one where one or more of the parties have the power, by the manifestation of an election to do so, to avoid the legal relations created by the contract." (footnotes omitted)); Jesse A. Schaefer, *Beyond a Definition: Understanding the Nature of Void and Voidable Contracts*, 33 Campbell L. Rev. 193, 193 (Fall 2010) (noting, at least in the context of informal commercial contracts, the meaning of "void" and "voidable" "is persistently and maddeningly slippery," and that "litigants are often surprised to

find the court announce that a transaction formerly (and unequivocally) declared to be void is, in fact, merely voidable or unenforceable.").

Here, the terms of the agreement stated that certain actions by Powell would render the agreement "null and void." We think it evident that when the parties used the phrase "null and void," they meant that the agreement was merely voidable by the State if Powell picked up additional charges before sentencing, not that the agreement would become void from its outset. This is evident from the State's conduct. Upon Powell's contempt finding, an additional law violation triggering paragraph ten of the agreement, the State took no action to disaffirm the contract; it only rescinded its sentencing recommendation. The agreement was not treated as void from its outset. Moreover,

> A classic rule of contract law is that a party should be prevented from benefitting from its own breach. This rule carries particular importance in the criminal context, as a court's failure to enforce a plea agreement against a breaching defendant would have a corrosive effect on the plea agreement process by rendering the concept of a binding agreement a legal fiction. Given that our criminal justice system depends upon the plea agreement process, that result cannot be countenanced.

*United States v. Erwin*, 765 F.3d 219, 230 (3d Cir. 2014) (cleaned up).

Also, our conclusion that the agreement was voidable at the State's election upon Powell's failure to uphold his end of the bargain does not run counter to the general proposition that a defendant's violation of the plea agreement does not grant the defendant a right to withdraw the plea. *State v. Foy*, 547 N.W.2d 337, 339 (Iowa 1998) ("If a defendant fails to uphold his or her end of the agreement, the State has no obligation to provide the defendant the anticipated benefits of the bargain.").

We cannot brand Powell's replacement trial lawyer as ineffective for failing to raise a doomed-to-failure "null and void" argument. *See Millam v. State*, 745 N.W.2d 719, 721-22 (Iowa 2008) ("Trial counsel has no duty to raise an issue that has no merit."). We next turn to Powell's second contention.

In the alternative, Powell argues his trial counsel was ineffective in failing to object when the prosecutor breached the plea agreement by recommending the court impose prison sentences. We find no breach on the part of the prosecutor. "Once a plea based upon a plea bargain has been accepted by the trial court, the prosecutor may not unilaterally withdraw the plea bargain without providing some sort of basis for its action or affording some sort of due process." *State v. Barker*, 476 N.W.2d 624, 628 (Iowa Ct. App. 1991). In such cases, the remedy is either specific performance of the agreement or withdrawal of the guilty plea. *See Foy*, 574 N.W.2d at 339. If the prosecutor breaches the plea agreement and defense counsel fails to object to the breach, counsel is ineffective. *See State v. Brown*, 911 N.W.2d 180, 186 (Iowa 2018). However, if a defendant fails to perform as promised under the plea agreement, no breach occurs because the State has no obligation to provide the defendant the anticipated benefits of the bargain. *Foy*, 574 N.W.2d at 339. The State has the burden of proving the defendant failed to perform in accordance with the plea agreement, and we look to the record made at the time of sentencing to determine whether the State has carried this burden. *See id.* at 339-40.

The plea agreement specifically required Powell to avoid additional violations of the law. *Cf. State v. Weig*, 285 N.W.2d 19, 21 (Iowa 1979) (finding defendant's legal violation during time between plea and sentencing did not relieve

the State of its duty to perform under the plea agreement because the State did not impose any such obligation in the plea agreement). It is undisputed that the court found Powell in contempt for violating the no-contact order after he entered his guilty plea. Because Powell failed to keep his nose clean before sentencing, his counsel had no duty to object to the prosecutor's failure to recommend the sentences set forth in the agreement.

We affirm Powell's convictions, judgments, and sentences.

**AFFIRMED.**