Clarence UHL and Herthel C. Uhl, Appellants,

v.

CITY OF SIOUX CITY, Iowa, A Municipal Corporation, and the Iowa State Highway Commission, n/k/a Iowa Department of Transportation, Appellees.

No. 91–643.

Court of Appeals of Iowa.

June 25, 1992.

David A. O'Brien and Sherry Stenzel, O'Brien, Galvin, Moeller & Neary, Sioux City, for appellants.

James L. Abshier, City Atty., and Timothy A. Scherle, Asst. City Atty., for appellee City of Sioux City.

Bonnie J. Campbell, Atty. Gen., David A. Ferree, Sp. Asst. Atty. Gen., and John W. Baty, Asst. Atty. Gen., for appellee Iowa Dept. of Transp.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

## FACTS

Clarence and Herthel Uhl own a farm located just east of the city limits of Sioux City, Iowa. On September 5, 1972, the City of Sioux City and the Iowa State Highway Commission signed a Pre–Design Project Agreement concerning the Interstate 520 by-pass which was to be built between U.S. Highway 20 and Interstate 29. The 520 by-pass would cut across Uhls' property, thereby dividing it in two.

On May 29, 1973, the City Council of Sioux City formally adopted an Amendment and Addendum to the Pre–Design Agreement. Paragraph 6 of the Amendment and Addendum contained the following language:

> The CITY agrees to construct within five (5) years of completion of the U.S. 520 project, a local road (street) under the U.S. 520 bridge structure at a site located somewhere between Stations 614 and 635, said local road (street) to connect to an existing street to the west, and to connect to a future city street system to the east; or shall have street right of way dedicated for said local road (street) prior to construction of U.S. 520. A sidewalk along said local road (street) through the intersection area shall be constructed by the CITY when same is warranted.

The 520 project was not finalized until June 9, 1975 when the Pre–Construction Agreement was formally executed by the City Council. The Pre–Construction Agreement incorporated the language of Paragraph 6 of the Amendment and Addendum and specifically confirmed the 520 design plans. There is no mention of the Uhls' property in the Pre–Design Project.

When the city council adopted the agreement, the Uhls owned the real estate from Station 624 up to and including Station 635. On April 2, 1976, the Uhls were served by the State with a Notice of Condemnation. The Notice of Condemnation took away the Uhls' two remaining access points to U.S. Highway 20 but gave the Uhls considerable access to their property "via the proposed city street under the bridges at station 629." The Uhls were awarded $106,800 in the original condemnation proceedings. They appealed and eventually reached a settlement to receive an additional $110,000 on August 21, 1982. The total amount received equals $216,800.

Before the condemnation appeal process concluded in 1982, the 520 project was finished. The State had already built the twin bridges at Station 629 and had also constructed a short segment of access road under the bridges. When the Uhls reached their settlement agreement with the State, it was evident the City was not taking any measures to construct the street the Uhls now claim they are entitled to.

The Uhls instituted these proceedings against the City and the Iowa Department of Transportation alleging damages for the City's failure to construct a street under the 520 by-pass through their property. They claim to be the intended third-party beneficiaries to the written agreement between the City and the Department of Transportation. The City claims the agreement it has with the State to construct the local road was not intended to directly benefit plaintiffs. The City further claims their intent to agree to build a road was to provide possible access to the east of the highway for any future development in that area. The State's intent was to hook up the by-pass with an existing highway. The City alleges the planning report and corridor public hearing provide evidence of what was intended by both the City and the State when reaching their agreement. Any benefit to plaintiffs, the City argues, was simply incidental.

The district court granted the Department of Transportation's motion for summary judgment noting the department has never been under any contractual obligation to construct the street, which is the basis of the Uhls' action. The matter against the City proceeded to trial before the district court.

The district court concluded the State cannot be found to have intended to benefit the Uhls when the City promised to construct a road. The planning report indicat-

ed the State intended to construct a grade separation in that area only when the traffic warranted it. At the time of the contract, the State was only contemplating the need for future access to any land development east of Interstate 520. Thus, the trial court concluded, the agreement did not manifest an intent to benefit the Uhls.

The court likewise rejected the Uhls' theory they were entitled to recover under the doctrine of promissory estoppel. The court noted the City was not a party to the condemnation proceedings and settlement stipulations. Thus, there was no evidence the City could have foreseen the Uhls would rely on its promise to construct the road when the Uhls reached their condemnation settlement with the State. The Uhls appeal. We affirm.

## ANALYSIS

### I. *Third Party Beneficiaries.*

■ Our review is for errors of law. Iowa R.App.P. 4. We view the evidence in the light most consistent with the judgment. *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 220 (Iowa 1988) (citation omitted). The trial court's findings of fact have the force of a jury verdict and are binding upon the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1). However, we are not bound by the trial court's application of legal principles or its conclusions of law in a law action. *Selchert v. State*, 420 N.W.2d 816, 817–18 (Iowa 1988) (citation omitted).

The Uhls contend they are third-party intended beneficiaries under Paragraph 6 of the Amendment and Addendum Agreement between the City and the State. The trial court looked to the agreement itself and the surrounding circumstances and disagreed with the Uhls. We concur in the result reached by the trial court.

Our supreme court, in *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216 (Iowa 1988), adopted section 302 of the Restatement (Second) of Contracts. That section provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicated that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) Contracts § 302 (1981).

As in *Midwest Dredging*, the primary question here under the Restatement (Second) is whether the agreement between the City and the State manifests an intent to benefit a third party. The courts are not in agreement over whether the intent of the promisor, the promisee, or both should be the rule. *Midwest Dredging*, 424 N.W.2d at 224. The intent of the promisee is generally considered controlling. *Id.*

As stated in *Midwest Dredging*, the focus in Restatement (Second) of Contracts section 302(1)(b) is clearly on the promisee's intent as indicated by the circumstances. Intent, absent ambiguity, is determined by what the contract itself says. Iowa R.App.P. 14(f)(14). Intent can be gathered from the circumstances surrounding the contract. With regard to Paragraph 6, the State was the promisee and the City the promisor. Thus the State's intent is important to our consideration of that paragraph.

■ Contracting parties may have several purposes or intended results in mind when entering a contract. *Midwest Dredging*, 424 N.W.2d at 225. In this respect, motive is distinct from intent. Our supreme court in *Midwest Dredging* cited with approval the following from *Hamill v. Maryland Cas. Co.*, 209 F.2d 338, 341 (10th Cir.1954):

In the legal sense, intent is the purpose to use a particular means to effect a certain result; motive is the reason which leads the mind to desire the result.

*Midwest Dredging,* 424 N.W.2d at 225 (citing *Hamill,* 209 F.2d at 341).

■ In order to enforce a contract, the third-party beneficiary must show the contract was made for his express benefit. *Khabbaz v. Swartz,* 319 N.W.2d 279, 285 (1982) (citing *Olney v. Hutt,* 251 Iowa 1379, 1384–85, 105 N.W.2d 515, 519 (1960)). In order for a third person to derive a benefit from a contract, the contract must have been made or entered into directly or primarily for the benefit of such third person. *Olney,* 251 Iowa at 1383, 105 N.W.2d at 518. "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Khabbaz,* 319 N.W.2d at 285 (quoting *Bailey v. Iowa Beef Processors, Inc.,* 213 N.W.2d 642, 645 (Iowa 1973), *cert. denied,* 419 U.S. 830, 95 S.Ct. 52, 42 L.Ed.2d 55 (1974)).

■ We conclude the Uhls have failed to carry the burden of showing the agreement was made for their express benefit. The language of Paragraph 6 and the surrounding facts reveal that at most the Uhls are incidental beneficiaries. There is no language in Paragraph 6 which can be construed to reasonably show an intent on the part of the State and the City to confer a direct benefit to them. It is clear from a reading of Paragraph 6 that the agreement was reached with the intent to benefit the general public, not a specific landowner. *See* § 313 of Restatement (Second) of Contracts. We believe there is substantial evidence in the record to support the trial court's finding in this respect and accordingly affirm.

Plaintiffs claim the language in Paragraph 6 is clear and unambiguous. They urge the trial court erred in admitting evidence designed to alter, vary, or add to the clear and unambiguous language of Paragraph 6.

■ Outside evidence is admissible to construe the language of a contract after the language is found to be ambiguous and subject to two different reasonable interpretations. Thus extrinsic evidence is admissible to interpret the language actually used by the parties. It goes without saying that it cannot be used to vary or alter language in the written agreement. *Bankers Trust Co. v. Woltz,* 326 N.W.2d 274, 276 (Iowa 1982). In this respect, extrinsic evidence offered to show "what the parties meant to say" instead of "what was meant by what they said" is not admissible. *Id.* However, extrinsic evidence is admissible as an aid to interpretation when it throws light on the situation or the parties, antecedent negotiations, the attendant circumstances, and the objects they were striving to attain. *Dental Prosthetic Services v. Hurst,* 463 N.W.2d 36, 39 (Iowa 1990).

■ We conclude that the extrinsic evidence offered by the defendant was received by the trial court to assist it in interpreting the language used by the City and the State. It was received by the trier of fact to assist it in determining what was meant by what they said in Paragraph 6.

Having determined the plaintiffs have not carried their burden, we conclude the trial court did not err in finding the plaintiffs not to be third-party beneficiaries.

## II. *Promissory Estoppel.*

■ The plaintiffs next urge they are entitled to enforce the City's promise under the doctrine of promissory estoppel found in section 90 of the Restatement (Second) of Contracts. The elements of promissory estoppel are as follows:

1. A clear and definite agreement;
2. Proof that the party seeking to enforce the agreement reasonably relied upon it to his detriment; and
3. A finding that the equities support enforcement of the agreement.

*Amana Society v. Colony Inn, Inc.,* 315 N.W.2d 101, 117 (Iowa 1982) (citing *In re Estate of Graham,* 295 N.W.2d 414, 418–19 (Iowa 1980)).

Section 90 of the Restatement provides: "(1) a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise." Comment c addresses reli-

ance by third persons specifically. It states that if a promise is made for the benefit of another, it may be foreseeable that the party may rely on that promise.

 The trial court found, and we agree, there is no evidence the City could have foreseen that the Uhls would rely on its agreement with the State when Uhls resolved their condemnation dispute. The City was not a party to the condemnation proceeding or the subsequent settlement stipulation. The plaintiffs have not carried their burden insofar as the doctrine of promissory estoppel is concerned.

III. *Motion for Summary Judgment.*

The Uhls argue the district court erred in granting the State's motion for summary judgment. The Uhls claim the State has violated the Constitution which provides for just compensation because it has not forced the City to build a street. They also claim the State's failure to force the City to build a street amounts to constructive fraud. We disagree.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact, *Milne,* 424 N.W.2d at 423, and the evidence must be viewed in the light most favorable to the resisting party, *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986).

 The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Id.; Sherwood v. Nissen,* 179 N.W.2d 336, 339 (Iowa 1970). A fact issue is generated if reasonable minds can differ on how the issue should be resolved, but if the conflict in the record consists only of the legal consequences flowing from undisputed facts, entry of summary judgment is proper. *Gott,* 387

N.W.2d at 343; *Milne,* 424 N.W.2d at 423. If the motion is properly supported, however, the resisting party "must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ.P. 237(e).

On May 11, 1976, a portion of the Uhls' land was condemned. The condemnation would have left the easterly portion of their property landlocked had an underpass not been planned under the new road adjacent to the Uhl properties. The condemnation notice provided the following language in paragraph 3:

3. Access to condemnees remaining property lying east of Primary Road No. U.S. 520 will be granted via the proposed city street under the bridges at Sta. 629+00. Temporary access to condemnees remaining land lying east of Primary Road No. U.S. 520 will be provided during construction and until such time as said proposed city street is constructed via said Sta. 629+00.

The prospect for the grant of access referred to in the Notice of Condemnation was confirmed with the following language of paragraph 6 in the Settlement Stipulation:

6. The right of the owners of the property described in the Notice of Condemnation to a suitable accessway across Highway 520 at Station 629.00 is confirmed.

We note neither the Notice or the Settlement Stipulation promised the State would build any street to connect to an existing street to the west, and to connect to a future city street system to the east. The State merely promised an accessway suitable for the proposed city street.

 Neither the Uhls' affidavit dated February 16, 1990, nor Attorney Birmingham's affidavit dated February 27, 1990, assert the State promised any street. The State's motion for summary judgment contained the affidavit of the State's District Construction/Maintenance Engineer who was familiar with the highway and the State's promises concerning it. The district engineer said the overpasses provided a suitable accessway and are ample for the

installation of a paved street. His affidavit was not contested in any way. Thus, it is undisputed that at the time of the summary judgment proceedings the State had complied with its obligation toward the Uhls.

The district court properly granted the State's motion for summary judgment. We affirm the district court on this issue.

## CONCLUSION

We determine any other issues the parties may have raised are either covered by this opinion or are without merit. We find the Uhls were not intended beneficiaries of the Addendum and the Agreement between the City and the State. The district court properly granted the State's motion for summary judgment. After considering all issues presented, we affirm the district court in all respects.

Costs of this appeal are taxed to the appellant.

AFFIRMED.

SCHLEGEL, P.J., concurs.

SACKETT, J., specially concurs without opinion.