**U.S. PACIFIC BUILDERS, INC., et al., Plaintiffs,**

v.

**MITSUI TRUST & BANKING CO., et al., Defendants.**

**Civil No. 95–00766 ACK.**

United States District Court, D. Hawaii.

April 6, 1999.

James H. Lawhn, Oliver Lau Lawhn & Ogawa, Honolulu, HI, for U.S. Pacific Builders, Inc.

Wallace B. Adams, Law Offices of Wallace B. Adams, Santa Rosa, CA, for Insurance Company of North America.

Richard B. Miller, Mark J. Bennett, McCorriston Miho Miller & Mukai, Louise K.Y. Ing, Alston Hunt Floyd & Ing, Honolulu, HI, John C. Griffith, Jr., The Mitsui Trust & Banking Co., Ltd., American Counsel, Tokyo, Japan, for Mitsui Trust & Banking Co., Ltd.

Ronald J. Verga, Edmunds Maki Verga & Thorn, Honolulu, HI, for Aloha Tower Associates.

Steven K. Hisaka, Hisaka Stonme Goto Yoshida Cosgrove & Ching, Honolulu, HI, for Charles Izzo D'Agostino Izzo Quirk, Thomas Quirk.

Arthur H. Kuwahara, Lee Kim Wong Yee & Lau, Honolulu, HI, for Aotani & Associates, Inc.

John S. Edmunds, Ronald J. Verga, Edmunds Maki Verga & Thorn, Honolulu, HI, for Aloha Tower Associates Piers 7, 8 and 9, Limited Partnership.

**ORDER: (1) GRANTING IN PART AND DENYING IN PART MITSUI TRUST'S MOTION FOR A DETERMINATION THAT MITSUI TRUST IS NOT REQUIRED TO ARBITRATE AND CANNOT BE BOUND BY ANY AWARD RESULTING FROM ARBITRATION BETWEEN UNITED STATES PACIFIC BUILDERS AND ALOHA TOWER ASSOCIATES PIERS 7, 8, AND 9 LIMITED PARTNERSHIP; (2) DENYING UNITED STATES PACIFIC BUILDERS' COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO COMPEL ARBITRATION; (3) GRANTING IN PART AND DENYING IN PART INSURANCE COMPANY OF NORTH AMERICA'S MOTION THAT MITSUI TRUST IS BOUND BY ANY AWARD RESULTING FROM ANY ARBITRATION BETWEEN U.S. PACIFIC BUILDERS, INC. AND ALOHA TOWER ASSOCIATES PIERS 7, 8, AND 9 LIMITED PARTNERSHIP; AND (4) ADOPTING IN PART MAGISTRATE'S FINDINGS AND RECOMMENDATION**

KAY, District Judge.

### BACKGROUND

In this proceeding, United States Pacific Builders ("USPB") and Insurance Company of North America, Inc. ("INA") seek to hold Mitsui Trust ("Mitsui") liable under a letter agreement (the "Set–Aside Letter") for all amounts due and owing to USPB under a contract (the "Construction Contract") with Aloha Tower Associates Piers 7, 8, and 9 Limited Partnership ("ATA") to construct the Aloha Tower Marketplace. In their First Amended Complaint filed April 7, 1997, USPB and INA allege that Mitsui Trust is obligated to pay USPB the amounts determined to be due to USPB in an arbitration (the "Arbitration") between USPB, INA and ATA. The Arbitration has two phases ("Phase One" and "Phase Two"). Phase One resulted in a settlement on most issues and Phase Two was scheduled to begin in November, 1998. ATA is currently defunct and bankrupt. USPB and INA seek to require Mitsui to participate in Phase Two of the Arbitration, to bind Mitsui to the result of Phase Two if Mitsui is not required to arbitrate, and to bind Mitsui to Phase One of the Arbitration.

### I. The Parties And Their Contractual Relationships

This case involves the development and construction of the Aloha Tower Marketplace (the "Project") located in Honolulu, Hawaii. On September 29, 1993, ATA, which owned the leasehold interest in the Marketplace, entered into a contract ("the Construction Contract") with USPB for construction of the Marketplace.

The Construction Contract contains an arbitration clause ("the Arbitration Clause") which provides that disputes arising from the Construction Contract or a breach of the Construction Contract shall be subject to arbitration. Specifically, the Construction Contract states that:

> All claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof, . . . shall be decided by arbitration . . . .

Article 4.5.1 of the Construction Contract between ATA and USPB dated September 29, 1993.

The Construction Contract also contains a provision which indicates in unambiguous language that it does not create a contractual relationship between anyone except ATA and USPB. Provision 1.1.2 of the Contract states, in relevant part:

> The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Owner and a Subcontractor or Sub-subcontractor, or (3) between any per-

sons or entities other than the Owner and Contractor.

Provision 1.1.2 of Construction Contract between ATA and USPB dated September 29, 1993.

In connection with the Construction Contract, several other agreements were negotiated. These included: (1) a loan agreement entered into between Mitsui and ATA ("Loan Agreement"); (2) an assignment of the Construction Contract from ATA to Mitsui ("the Assignment") and an accompanying revocable license from Mitsui to ATA ("License") which permitted ATA to deal with USPB under the Construction Contract; (3) the Set–Aside Letter drafted by Mitsui; and (4) a Performance Bond and a Labor and Material Bond executed by INA. The Court will explore each of these agreements separately.

### A. *The Loan Agreement*

On September 29, 1993, Mitsui and ATA entered into a Loan Agreement in which Mitsui agreed to provide financing for the Aloha Tower Marketplace. The Loan Agreement included several key provisions. First, the Loan Agreement required that ATA execute a promissory note payable to Mitsui in the principal amount of the commitment. Second, the Loan Agreement required that ATA give Mitsui an assignment of the Construction Contract, an assignment of the Architect's Contract, and several other collateral assignments. In return, Mitsui would give ATA a revocable license to design and complete all aspects of the project. Third, the Loan Agreement provided that Mitsui would issue to the General Contractor a Set–Aside Letter, specifying the terms of the Loan Agreement and promising payment for outlays on behalf of the Project.

### B. *The Assignment of the Prime Contract from ATA to Mitsui*

As required by the Loan Agreement, ATA executed an Assignment of the Construction Contract in favor of Mitsui on September 29, 1993. This Assignment was executed "as an inducement" for Mitsui's making of a $60,000,000 loan in favor of ATA to finance the costs in connection with the construction of Aloha Tower. *See* Mitsui's Mem. in Opp. to USPB's Mot. for Partial Summ. J. at Exh. 2.

USPB explicitly consented to the Assignment in a writing made part of the Assignment of Construction Contract ("the Contractor's Consent"). *See* USPB's Mem. in Supp. of Mot. for Partial Summ. J. at Exh. C, page 4. This consent provided that in the event ATA were in default under the Construction Contract, Mitsui could request performance of the Contract by USPB and reimburse USPB for its work in accordance with the Contract. Stated differently, this consent would allow Mitsui to "step into ATA's shoes" and complete the Project *if it so chose.*

The Assignment of the Construction Contract contains the following significant terms:

> The Assignor, as an inducement for the Lender's making a $60,000,000.00 loan (the "Loan") in favor of the Assignor, to finance the costs in connection with the construction of the Aloha Tower festival marketplace located in Honolulu, Hawaii (the "Project"), hereby assigns to the Lender all of the right, title and interest of the Assignor in, to and under that certain Contract dated September 29, 1993, between Assignor, as the "Owner," and U.S. Pacific Builders, Inc., as the Contractor, relating to the construction of the Project (the "Contract").

> \* \* \* \* \* \*

> So long as there shall exist no Event of Default, the Assignor shall have a revocable license to deal with the Contractor as the Owner under the Contract and to enforce the covenants thereof. That revocable license shall be *revoked automatically* (without written notice) *upon the occurrence of an Event of default.* AND, in consideration of the premises, the Assignor covenants that:

(1) If an Event of Default occurs, the Lender may, *at its option,* take all such actions and do all such things with respect to the Contract as could the Assignor, in the same manner and to the same extent that the Assignor, as Owner under the Contract, might reasonably so act. In furtherance thereof and not by way of limitation, the Lender is and shall be empowered to exercise all the rights and privileges of the Owner thereunder and to demand and sue for performance of the Contract.

(2) *Nothing herein contained shall be construed to bind the Lender to the performance of any of the terms and provisions contained in the Contract,* or otherwise to impose any obligation on the Lender *until* such time as the Lender shall have (a) *acquired possession and ownership* of the Assignor's interest in the land on which the Project is located, in foreclosure proceedings or by assignment of lease in lieu of foreclosure, *and* (b) *expressly assumed in writing the obligations of the Owner* under the Contract.

*Id.* at page 1–2 (emphasis added).

As these terms indicate, the Assignment of the Construction Contract was intended as security for the $60,000,000 loan Mitsui was simultaneously making to ATA for construction of the Project. If ATA defaulted on the loan, two events would occur. First, ATA would lose its License and thus lose its right to deal with USPB as the Owner under the Contract and enforce the Contract's covenants. Second, in the event of default, Mitsui could, *at its option,* acquire the rights and obligations of ATA's Contract with USPB by expressly assuming the Contract in writing. Thus, the Assignment and License were created to provide Mitsui with a security interest which would protect it if ATA defaulted on the loan.

Based on the record, it appears that Mitsui did *not* attempt to "stand in the shoes" of ATA under this Assignment, nor did Mitsui expressly assume the obli-

gations of the Construction Contract in writing.

## C. *The Set–Aside Agreement*

On October 4, 1993, Mitsui, ATA, and USPB executed a Set–Aside Funding Agreement. The Set–Aside Letter was drafted by Mitsui and signed by Mitsui, USPB, and ATA. The Set–Aside Letter was created as an inducement for USPB to enter into the Construction Contract with ATA and also as an inducement for Mitsui to approve the Construction Contract and disburse the Loan Proceeds. *See* Mitsui's Mem. in Opp. to USPB's Mot. for Partial Summ. J. at Exh. 3.

The Set–Aside Letter's principal paragraph provides the following:

1. From the Loan Proceeds, the sum of $36,225,000.00 corresponding to line items 2, 3, 4, 5, 6, 7, 8, 9 and 10 in the Project Budget (as defined in the Loan Agreement) (as such sum may be adjusted pursuant to approved change orders to the Construction Contract approved by the Lender in writing, in accordance with the Loan Agreement, the "Set–Aside Amount") shall be used to pay the General Contractor for work performed by the General Contractor under the Construction Contract and, except as otherwise provided herein, such portion of the Loan Proceeds shall not be disbursed for any other purposes[.]

*Id.* Although the Set–Aside Letter specifically refers to the Construction Contract and the Loan Agreement, the Court finds that it does not explicitly incorporate either of the contracts by reference.

## D. *The Bonds*

Under the Construction Contract between ATA and USPB, USPB was required to obtain both a Performance Bond and a Labor and Materials Bond ("the Bonds") to ensure completion of the Project. INA issued these two Bonds on October 1, 1993. The Bonds named ATA and

Mitsui as Co–Obligees,[1] USPB as principal, and INA as surety. As required under the Construction Contract, USPB sought and obtained these Bonds as additional security for ATA and Mitsui. Neither ATA nor Mitsui were signatories to the Bonds.

Both the Performance and the Labor and Materials Bond incorporate the Construction Contract, any amendments such as change orders so long as they do not increase the construction price by more than ten percent, and USPB's consent to the Assignment of the Construction Contract from ATA to Mitsui by reference. The applicable language states:

> The term "Contract" shall for all purposes hereof mean and include (i) the contract described on the first page of this Bond, (ii) all amendments which may from time to time be made thereto, whether by change orders or otherwise, notice of which amendments is hereby waived by the Surety so long as such amendments do not increase the construction contract price by an aggregate amount in excess of ten percent (10%) of the penal sum of the bond, and (iii) Contractor's consent to the Assignment of the Construction Contract, attached to the contract described on the first page of this bond.[2]

Mitsui's Mem. in Supp. of Mot. for Determination at Exh. A.

Using this definition of Contract, the Performance Bond states:

> Know All Men By These Presents, That we, U.S. Pacific Builders, Inc. as Principal, and the Insurance Company of North America ... (hereinafter called the Surety), as Surety, are held and firmly bound unto Aloha Tower Associates ..., and The Mitsui Trust ... in the sum of $36,225,000.00 ... WHEREAS, the Principal entered into a certain *Contract* dated 9/29/1993 for The Waterfront at Aloha Tower–Phase I in accordance with the terms and conditions of said Contract, which is hereby *referred to and made a part hereof* as it fully set forth herein.

*Id.* (emphasis added).[3] The parties do not dispute that, pursuant to the foregoing language, the Bonds incorporate the Construction Contract by reference.

The Performance Bond also provides that USPB and INA are not liable to the Obligees (Mitsui and ATA) unless the Obligees or any of them have performed the obligations to USPB in accordance with the terms of the Construction Contract. Specifically, the Bond provides

> PROVIDED, HOWEVER, there shall be no liability under this bond to the Obligees, or either of them unless the said Obligees, or either of them, shall make payments to the Principal strictly in accordance with the terms of said Contract as to payment, and shall perform all of the other obligations to be performed under said Contract at the time and in the manner therein set forth; all of the acts of one Obligee being binding on the other.[4]

*Id.*

USPB claims that it has not been paid for the work it performed under the Con-

---

1. The Labor and Material Payment Bond and the Performance Bond are two separate documents executed on the same day. The Labor and Material Payment Bond lists ATA as Obligee. A Rider was added to the Bond which names Mitsui as an additional Obligee. The Performance Bond, however, names both Mitsui and ATA as Obligees and has no additional Rider. Both documents contain similar language.

2. The identical language can be found in Addendum A to the Labor and Material Payment Bond. The Court notes that this language is not standard form language. Rather, the parties have intentionally inserted this definition of "Contract" into both the Performance and the Labor and Material Bonds.

3. The Labor and Materials Bond contains similar language.

4. The Court notes that this clause is intended to protect INA from multiple claims against the Bond and does not, as USPB and INA argue, mean that one co-obligee can bind

struction Contract and that it is entitled to change orders to the Construction Contract for extra work, as well as adjustments to contract allowances. USPB seeks recovery of these unpaid amounts from Mitsui under the Set–Aside Letter.

## II. *The Proceedings To Compel Arbitration*

On July 11, 1995, Mitsui filed a Special Proceeding (*Mitsui Trust v. USPB*, S.P. No. 95–316) in the First Circuit Court of the State of Hawaii, seeking a permanent stay of arbitration and a determination that it was not bound by the outcome of the Arbitration initiated by USPB. On September 28, 1995, USPB and INA filed a Counter Motion to Compel Arbitration. They argued that Mitsui should be bound because (1) Mitsui contractually agreed to arbitrate; and (2) the Bond provides that "all of the acts of one obligee [i.e., ATA] [are] binding on the other [i.e., Mitsui Trust]."

On November 27, 1995, the First Circuit Court entered an order (the "State Court Arbitration Order") which provided that Mitsui was not obligated to submit to arbitration, but stated that Mitsui could not relitigate issues decided by the Arbitrators when there are any (1) claims against the Bond; or (2) claims of Mitsui against INA or USPB or a subcontractor participating in the arbitration relating to the discharge of obligations under the Bond. *See* Mitsui's Mem. in Supp. of Mot. for a Determination at Exh. B.

On September 5, 1995, USPB and INA filed a Motion to Compel Arbitration in the U.S. District Court for the District of Hawaii. On January 2, 1996, U.S. District Judge Helen Gillmor entered the District Court Arbitration Order, which gave full faith and credit and collateral estoppel effect to the State Court Arbitration Order.

The State Court Arbitration Order was vacated on June 24, 1998, pursuant to a stipulation in open court on May 26, 1998. Based on the stipulation, USPB, INA and Mitsui agreed to vacate the U.S. District Court Arbitration Order nunc pro tunc in a Stipulation and Order signed by this Court on July 30, 1998.

## III. *The Instant Motions*

Because the District Court Arbitration Order has been vacated, Mitsui now seeks a determination that: (1) it is not required to participate in Phase Two; and (2) it is not bound by the award in Phase One or any possible award in Phase Two. On September 24, 1998, Mitsui filed a Motion for a Determination that Mitsui Trust Is Not Required to Arbitrate and Cannot Be Bound by Any Award Resulting from Any Arbitration between United States Pacific Builders and Aloha Tower Associates Piers 7, 8, and 9 Limited Partnership. On October 9, 1998, USPB filed a Counter–Motion for Partial Summary Judgment and to Compel Arbitration. On October 9, 1998, INA filed a Counter–Motion for a Determination that Mitsui Trust Is Bound by Any Award Resulting from Any Arbitration between U.S. Pacific Builders, Inc. and Aloha Tower Associates Piers 7, 8, & 9 Limited Partnership. On December 15, 1998, Magistrate Judge Yamashita issued a Findings and Recommendation ("the F & R") granting Mitsui's motion and denying the counter motions filed by USPB and INA.

On December 30, 1998 and January 4, 1999, USPB and INA filed their respective objections to the F & R. On January 11, 1999, Mitsui filed its response to the objections.[5]

### STANDARD OF REVIEW

Under Local Rule 74.1, the district court may set aside a magistrate's order regard-

---

another co-obligee to arbitration results on issues unrelated to the Bonds.

5. On February 16, 1999, this case was reassigned to this Court from Judge Mollway, who recused herself due to a conflict of interest.

ing any nondispositive, pretrial matter if that order is clearly erroneous and contrary to law. *See also* 28 U.S.C. § 636(b)(1)(magistrate judges are authorized to hear and determine pretrial matters).

With respect to a magistrate's case dispositive proposed order, findings, or recommendation, any party may object, and the district court must review *de novo* those portions of the magistrate's findings or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate's findings or recommendation. Local Rule 74.2. *De novo* review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate's findings or recommendation to which objections are made. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

The Court may accept those portions of the magistrate's findings or recommendation which are not objected to if it is satisfied that there is no clear error on the face of the record. *See Campbell v. United States District Court,* 501 F.2d 196, 206 (9th Cir.1974).

### DISCUSSION

The Court has reviewed the briefs submitted to Magistrate Judge Yamashita, as well as the instant objections and response. According to the Ninth Circuit, the Court may adopt the parts of the F & R that are not objected to if there is no clear error on the face of the record. *See Campbell,* 501 F.2d at 206. The instant objections are limited to a few discrete issues. Because the Court does not find clear error with those parts of the F & R which are not objected to, the Court here-

by adopts without change the parts of the F & R not addressed in this Order.

USPB and INA make three basic objections to the F & R. First, USPB and INA argue that Mitsui is required to arbitrate by virtue of its status as a third-party beneficiary of the Bonds. Second, USPB and INA argue that Mitsui is estopped from denying that it is bound by the Arbitration Clause. Third, USPB argues that the Assignment of the Construction Contract from ATA to Mitsui is not incorporated by reference into the Bonds, contrary to Magistrate Judge Yamashita's findings in the F & R. The Court will address each of these objections separately.

### I. The Bonds Incorporate the Assignment by Reference

The Court first addresses the terms of the Bonds, as this issue is relevant to the parties' other objections. USPB and INA argue that the Bonds do not incorporate the Assignment by reference, but rather, incorporate only the Contractor's Consent. The Court disagrees and finds that the Assignment is clearly incorporated into the Bonds.

The parties do not dispute that the Bonds incorporate the Construction Contract by reference. The Construction Contract is comprised of a series of "Articles." Article 7 of the Construction Contract is entitled "Other Provisions." Article 7, specifically ¶ 7.3, reads, "See Exh. 'K' for *Assignment of Construction Contract.*" *See* Mitsui's Mem. in Supp. of M. for Determination at Exh. I (emphasis added). This provision makes it clear that the Assignment is not a separate document, but rather a part of the Construction Contract itself. Since it is undisputed that the Construction Contract is incorporated by reference into the Bonds, the Court finds that the Assignment is incorporated as well.

As the Court has already recognized, the Assignment indicates that Mitsui is not bound to arbitrate unless it expressly assumes the obligations of the Construction

Contract in writing. Thus, since the Assignment is incorporated by reference into the Bonds, Mitsui is not required to arbitrate disputes arising under the Bonds unless it expressly assumes the obligations of the Construction Contract in writing, which it has not done.[6]

## II. *Mitsui's Status as a Third–Party Beneficiary of the Bonds Does Not Obligate it to Arbitrate*

USPB and INA next argue that since Mitsui is a third-party beneficiary of the Bonds, it is required to arbitrate the dispute over its obligations under the Set–Aside Letter.[7] While the Court agrees that Mitsui is a third-party beneficiary of the Bonds, it finds that Mitsui nonetheless has no duty to arbitrate.

A third-party beneficiary is defined as "[o]ne for whose benefit a promise is made in a contract but who is not a party to the contract." Black's Law Dictionary 1480 (6th ed.1990). The rights of the third-party beneficiary are limited to the promise which may be expressly stated in the contract or implied from surrounding circumstances. *See Hunt v. First Insurance Co. of Hawaii, Ltd.*, 82 Haw. 363, 367, 922 P.2d 976 (App.1996). Furthermore, the parties to the contract must have intended to directly benefit the third party. *See id.* The primary question in determining whether a non-signatory to a contract is a third-party beneficiary is "whether the agreement manifests an in-

tent to benefit a third-party." *Uhl v. City of Sioux City Iowa*, 490 N.W.2d 69, 72 (Iowa App.1992); *see also* Restatement (Second) of Contracts, § 302(1)(b). The intent must be reflected in the express terms of the contract, unless the contract is ambiguous. *See Uhl* at 72.

Here, it is clear that Mitsui is a third-party beneficiary of the Bonds as it is a named obligee on both bonds. The Bonds were obviously intended to benefit Mitsui in that they secure payment to Mitsui in the event USPB defaults in performance or payment.

The parties do not dispute that the Bonds incorporate the Construction Contract by reference. However, as the Court has already held, the Assignment is part of the Construction Contract. Therefore, Mitsui's obligation to arbitrate under the Bonds would still be subject to a condition precedent: that Mitsui expressly assume the obligations of the Construction Contract in writing. Mitsui has not done so, and therefore is not required to arbitrate.

Furthermore, Mitsui's status as a third-party beneficiary, by itself, does not create obligations under the Bonds in any event. To support its contention that a third-party beneficiary of a contract · may be bound by obligations in that contract, USPB cites several cases from a variety of jurisdictions. However, these cases are distinguishable because, unlike Mitsui, which is a third-party beneficiary to a separate document (the Bonds), the plaintiffs

---

**6.** The Court also recognizes that a number of courts have held that the incorporation by reference of a contract into a bond is not intended to bring the substantive provisions of the contract into the bond. Instead, as these courts have held, incorporating the contract by reference merely "establishes the limits of the surety's obligation and aids in ascertaining the measure of performance required." *Transamerica Ins. Co. v. Yonkers Contracting Co.*, 49 Misc.2d 512, 267 N.Y.S.2d 669, 671 (1966); *see also Matson, Inc. v. Lamb Associates Packaging, Inc.*, 328 Ark. 705, 947 S.W.2d 324, 325 (1997) (discussing trial court's findings); *Downingtown Area School Dist. v. International Fidelity Ins. Co.*, 671 A.2d 782, 787 (Pa.Cmwlth.1996);

*Windowmaster Corp. v. B.G. Danis Co.*, 511 F.Supp. 157 (S.D.Ohio 1981). Thus, under such reasoning, Mitsui would not be bound to arbitrate disputes arising under the Bonds in any event.

**7.** Mitsui argues that the Court should not consider this argument, since USPB and INA raise the issue for the first time in their objections. However, because the concept of third party beneficiaries was raised in general by USPB in its motion dated October 27, 1998, and also addressed by Magistrate Judge Yamashita in the F & R, the Court considers it here.

in the cases cited were third-party beneficiaries to the arbitration agreements themselves. *See Ripmaster v. Toyoda Gosei, Co., Ltd.,* 824 F.Supp. 116 (E.D.Mich.1993) (third-party beneficiary to an arbitration agreement brought suit against a signatory to the agreement); *Wehe v. Montgomery,* 711 F.Supp. 1035 (D.Or.1989) (third-party beneficiary to investment account containing arbitration clause brought suit against investment company); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.,* 974 F.Supp. 293 (S.D.N.Y.1997) (third-party beneficiary to contract containing arbitration clause brought breach of contract claims); *Lee v. Grandcor Medical Systems, Inc.,* 702 F.Supp. 252 (D.Colo.1988) (plaintiffs suing under contract to which they were third-party beneficiaries). These cases by no means mandate a conclusion that Mitsui is required to arbitrate in the instant case.

USPB also cites *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986) to support its contention that Mitsui should be bound to arbitrate despite the fact that it was a non-signatory to the Bonds. However, in *Letizia,* the Ninth Circuit held that non-signatory *employees* could be bound by an arbitration agreement entered into by their employer. In so holding, the Ninth Circuit recognized that a number of circuits have held that nonsignatories of arbitration agreements may be bound by the agreement under agency principles. *See id.* at 1187. That is not the case here, as Mitsui was neither an employee · nor an agent of USPB or INA.

In light of the foregoing, it is clear that Mitsui's status as a third-party beneficiary to the Bonds creates no obligation on its part to arbitrate disputes over the Set Aside Letter.[8]  Therefore, the Court rejects this objection to the F & R.

### III. *Mitsui is Not Estopped From Denying That it is Obligated to Arbitrate Pursuant to the Construction Contract*

■ USPB and INA finally argue that, because Mitsui is counter-suing under the Bonds, it is thereby estopped from denying that it is bound by the Arbitration Clause. To support this argument, they claim that Mitsui "cannot have it both ways," filing suit under the Bonds on the one hand, but denying its obligation to arbitrate under the Set–Aside Letter on the other. The Court disagrees.

The cases cited by USPB and INA to support their estoppel argument are distinguishable from the instant case and support the Court's conclusion that estoppel is not appropriate here. For example, in *Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.,* 659 F.2d 836 (7th Cir.1981), the party trying to avoid arbitration was a party to the contract which contained the arbitration clause. Here, Mitsui is not a party to the Construction Contract, and its obligations to arbitrate do not arise unless it expressly assumes the obligations under the Construction Contract in writing.

The *Hughes* case and the other cases cited by USPB and INA are all distinguishable from the instant case, and none of the cases cited warrant a conclusion that Mitsui should be estopped from bringing its counterclaim on the Bonds. Therefore, the Court rejects this objection to the F & R. However, as discussed below, Mitsui may be bound by the arbitration results on certain issues.

---

**8.** The Court has already held that the Set–Aside Letter does not incorporate the Arbitration Clause by reference. Thus, it is clear that Mitsui is not bound to arbitrate over disputes arising out of its obligations under the Set–Aside Letter. However, even if the Court were to find that the Set–Aside Letter incorporates the Construction Contract—and thus the Assignment—by reference, Mitsui would still not be required to arbitrate because it has not expressly assumed the obligations of the Construction Contract in writing.

### IV. *Mitsui is Bound By the Arbitration Award in Phase One or Phase Two to the Extent it Seeks to Recover Under the Bonds on Issues Decided in Arbitration*

■ The final issue before the Court is whether Mitsui will be bound by the results of Phase One and Phase Two arbitration, notwithstanding the Court's finding that Mitsui cannot be compelled to arbitrate. The Court finds that Mitsui will be bound to a certain extent.

As noted earlier, the Bonds expressly provide that "all of the acts of one Obligee [are] binding on the other." The Court has already found that this clause is intended to protect INA from multiple claims against the Bonds, and as such, it would be inconsistent with that finding to allow Mitsui to assert a claim on the Bonds which had already been decided in arbitration. Therefore, to the extent Mitsui seeks to recover under the Bonds on issues decided in arbitration, the Court finds that Mitsui will be bound by the arbitration results.

However, the Court finds that Mitsui is not bound by any arbitration results from Phase One or Phase Two on issues unrelated to the Bonds. Mitsui will, of course, be bound by those results should it choose to step into ATA's shoes and expressly assume the obligations of the Construction Contract in writing.

### CONCLUSION

For the above reasons, the Court GRANTS IN PART and DENIES IN PART Mitsui's Motion for a Determination That Mitsui Trust is Not Required to Arbitrate and Cannot be Bound by any Award Resulting from Any Arbitration Between United States Pacific Builders and Aloha Tower Associates Piers 7, 8, and 9 Limited Partnership. The Court DENIES USPB's Counter Motion for Partial Summary Judgment and to Compel Arbitration. The Court further GRANTS IN PART and DENIES IN PART INA's Motion That Mitsui Trust is Bound by Any Award Resulting From Any Arbitration Between U.S. Pacific Builders, Inc. and Aloha Tower Associates Piers 7, 8, and 9 Limited Partnership.

IT IS SO ORDERED.