# IN THE COURT OF APPEALS OF IOWA

No. 19-1792
Filed December 16, 2020

**RAVINDRA MALLAVARAPU, MARK HANNASCH, CHAD BENSON, DANAN DOU, SCOTT MILLER, MARK DEGROOTE, and ZIFAN JU,**
Plaintiff-Appellants/Cross-Appellees,

**vs.**

**CITY OF CEDAR FALLS,**
Defendant-Appellee/Cross-Appellant,

**and**

**THUNDER RIDGE WEST OWNERS ASSOCIATION,**
Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

The homeowners appeal, while the city and a business owners association cross-appeal, an order denying specific performance of a storm water drainage and detention easement agreement. **AFFIRMED.**

Brandon M. Schwartz of Schwartz Law Firm, Oakdale, Minnesota, for appellants/cross-appellees.

Samuel C. Anderson of Swisher & Cohrt, P.L.C., Waterloo, for the city, appellee/cross-appellant.

Christopher S. Wendland of Clark, Butler, Walsh & Hamann, Waterloo, for the business owners association, appellee/cross-appellants.

Heard by Doyle, P.J., and Tabor and Ahlers, JJ.

**TABOR, Judge.**

Calling themselves the "pond scum neighbors," seven homeowners asked the Ridges Park Homeowners Association for help in improving the water quality in the wet detention basin abutting their backyards. In August 2017, the homeowners association contacted the City of Cedar Falls to flag the "serious problem" with stagnant, shallow water and algae in the basin. When the city took no action, the homeowners petitioned for specific performance of the maintenance provisions in a 1999 amendment to a 1997 storm water drainage and detention easement between the city and Thunder Ridge West Owners Association.[1] The homeowners also relied on a 1999 recreation easement entered into by Thunder Ridge West and Ridges Park. The homeowners demanded that the city and Thunder Ridge West remove silt in the water and regrade the detention basin.

The city and Thunder Ridge West challenged the homeowners' standing to make those demands.[2] In rejecting their standing challenge, the district court found the homeowners were "incidental third-party beneficiaries" of the easement agreements. But the court ultimately denied the homeowners' demand for specific performance, finding the city engineer had sole discretion to determine whether the detention basin needed maintenance work.

Like the district court, we reject the remedy of specific performance, but for a different reason. The homeowners did not have standing to bring this action. As

---

[1] We will refer to the Ridges Park Home Owner Association as Ridges Park and the business owners association as Thunder Ridge West.
[2] Despite repeatedly challenging the homeowners' standing in the district court, Thunder Ridge West did not raise this issue on appeal. We thus rely on the city's arguments made in its cross-appellant's brief.

"incidental beneficiaries," the homeowners cannot claim any right to performance under the storm water easement agreement between the city and Thunder Ridge West or under the recreational easement agreement between Thunder Ridge West and Ridges Park. *See Khabbaz v. Swartz*, 319 N.W.2d 279, 285 (Iowa 1982). Rather, the homeowners had the burden to show that the city and Thunder Ridge West created the storm water easement with the intent to expressly benefit the homeowners. Because the homeowners did not prove they suffered a harm that coincides with the intent of the contracting parties, they have no basis to seek specific performance under the easement agreements. Finding the standing issue dispositive, we need not address the remaining claims of either side on appeal.[3]

## I.      Facts and Prior Proceedings

This case traces back to a 1997 storm water easement agreement between the city and Thunder Ridge L.P., a Nebraska limited partnership planning to develop a five-lot commercial subdivision in Cedar Falls. Under that agreement, Thunder Ridge L.P. obtained a perpetual easement to construct and maintain a storm water detention and drainage facility for the benefit of those five business property owners.[4] After an amendment in 1999,[5] the duties under the easement

---

[3] In their appellant's brief, the homeowners claim the district court "impermissibly rewrote" the 1999 amendment, a 2010 city ordinance on storm water control, and a related storm water management manual. As a second issue, the homeowners argue the city cannot prevail because it failed to offer testimony from the city engineer. In its cross-appeal, Thunder Ridge West claims the district court erred in giving the 2010 ordinance retroactive effect. We decline to reach these issues.

[4] Two years later, the president of Thunder Ridge L.P. established Thunder Ridge West, an Iowa nonprofit corporation, to assume its obligations under the storm water easement agreement.

[5] For clarity, we will refer to the 1997 easement agreement and 1999 amendment collectively as the storm water easement agreement.

agreement included, but were not limited to: installation, maintenance, repair, reconstruction, and replacement of the drainage facility in compliance with city standards. According to engineering plans from that time, the city approved construction of a wet detention basin with a permanent pond feature.

Also in 1999, Ridges Development L.P.,[6] a residential housing developer, conveyed two tracts of land to Thunder Ridge West "for the primary purpose of use as a storm water and surface water drainage and detention facility." As a condition to transfer, Ridges Development reserved to itself a secondary easement over the property "for recreation and beautification purposes." In a recreation easement between Thunder Ridge West and Ridges Park, the parties agreed to share the property for both recreational and storm water detention purposes.[7] But when weighing the two interests, the parties agreed the property's "dominant purpose" was for the storm water detention and drainage facility.

At the same time, four of the five business property owners in the subdivision and a nearby Fareway Store became members of Thunder Ridge West. As the "benefited estate" of the storm water easement agreement, each

---

[6] Ridges Development (not to be confused with the Ridges Park Homeowners Association) is a Nebraska-based limited partnership that owned tract A and tract B in Ridges Third Addition to Cedar Falls.

[7] In this agreement, Thunder Ridge West granted a subservient easement to Ridges Park "for recreation and beautification purposes." In consideration of the recreation easement, Ridges Park promised to indemnify Thunder Ridge West for "any claim or loss arising by or through [Ridges Park] or by anyone in or upon the real estate for recreational purposes, and from any claim for loss of use as a recreational area." In the district court, Thunder Ridge West filed a third-party complaint against Ridges Park based on the indemnification clause, contending the homeowners' claims related to their loss of recreational use. In its October 2019 order, the court dismissed the third-party complaint in its entirety. Because no one challenged that dismissal, Ridges Park is not a party on appeal.

member agreed to cover 10% of the maintenance and repair costs of the detention basin.  And as easement owner, Thunder Ridge West agreed to take on the remaining 50% of the costs.  Unless later modified, that allocation of maintenance liability was "binding upon the parties and their respective successors, grantees and assigns."  Included in the storm water easement agreement was the following maintenance provision:

> The owners of all of the properties which comprise the Benefited Estate agree to install, construct, maintain, repair, reconstruct and replace the storm water detention and control facility on the Servient Estate at their expense.  Said construction and maintenance shall in all respects be in accordance with specifications as determined by the City Engineer of the City of Cedar Falls, Iowa, and shall include, without limitation, removal of trees and brush, dredging of silt from the pond, mowing of weeds, repairing banks and slopes of the detention basin, maintenance, repair, reconstruction and replacement of the storm water detention structures, spillways, and piping, and any other acts necessary to maintain said off-site storm water detention area to the standards determined by the Office of the City Engineer . . . and in compliance with the storm water detention provisions of the Code of Ordinances of the City of Cedar Falls, Iowa.

If Thunder Ridge West did not maintain the detention basin under the standards set forth, the city reserved the right to enforce the maintenance obligations.  The enforcement provision stated:

> In consideration of the granting of the perpetual easement for off-site storm water drainage and detention . . . the owners of the Benefited Estate . . . hereby perpetually agree to perform the maintenance responsibilities of the Storm Water Drainage and Detention Easement Agreement and of this Amendment . . . .  In the event that the owners of the Benefited Estate should fail, refuse, or neglect to perform the obligations imposed herein, the owners . . . agree that *the City may install said improvements, perform said maintenance and assess the total costs thereof as a lien against the Benefited Estate.*

(Emphasis added).

Against that backdrop, the city hired an engineering firm to design a wet detention basin that could serve the dual purposes under the easement agreements. As constructed, the drainage facility also contains a permanent pond feature that is used for recreational and aesthetic purposes. According to Chase Schrage, the city's public works director, the actual detention basin is an area above the surface level of the pond. There, two 18-inch concrete pipes release water overflow from the detention basin into a private lake, which eventually discharges into the Cedar River. Based on this design, Schrage testified the drainage function would not interfere with the pond feature unless there was a defect in the construction itself.

The seven homeowners bringing this action live in the neighborhood bordering the detention basin. For some, the water feature was a major factor in their purchasing decision. Since moving into the neighborhood, the homeowners used the pond for various recreational purposes, including fishing, paddle boating, and taking scenic strolls around the shore. As one homeowner described it, the condition of the pond was "immaculate" when they purchased their homes in the late 2000s. But over time, the water quality diminished. For instance, algae and vegetation growth spiked, silt built up, and the water emitted unpleasant smells. The water level also decreased substantially, making the pond less visually appealing.

Given those concerns, the homeowners hired an engineering firm in June 2017 to investigate the detention basin. The firm, Shive-Hattery, Inc., obtained copies of the construction plans from 1999 as a point of comparison. The investigation revealed the pond's water level was about "40% of its original design

volume." Those "shallow depths" made the pond unfit for recreational purposes, according to the Shive-Hattery report. The report's author, Ervin Mussman, opined that the degradation of the water quality made the pond "almost a nuisance" as it continued to silt in. Finding silt to be the main culprit, Shive-Hattery recommended "the pond should be drained, the accumulated sediment removed, and the pond bottom and sides restored to the original design cross sections." The firm also "estimated that approximately 14,000-15,000 cubic yards of material would need to be removed."

Based on those recommendations, homeowner Mark Hannasch, a member of Ridges Park, sent a letter to the city administrator that August, requesting "action be taken to enforce the city's existing agreement regarding the wet detention basin." Raising both "significant health risk" and "recreational use" concerns, Hannasch asked the city to ensure Thunder Ridge West performed the maintenance work required under the storm water easement agreement. In making that request, he asserted: "Paragraph 6 of the November 8, 1999 Amendment . . . clearly provides that the property owner is responsible for maintenance of the detention pond including dredging of silt."

Because the city took no action, in December the homeowners petitioned the city and Thunder Ridge West for specific performance of their maintenance requests. In resistance, the city raised an affirmative defense that the homeowners failed to state a claim for which relief could be granted. For its part, Thunder Ridge West added the affirmative defense that the homeowners were "not in contractual privity with Defendant and thus [were] not real parties in interest."

As the case proceeded, the city and Thunder Ridge West moved to exclude evidence of a city ordinance enacted in 2010 and a storm water management manual from 2009. The city argued those exhibits would be irrelevant because the ordinance and manual "were created at least ten years after the construction of the storm water retention basin at issue."

At the start of the two-day trial, the district court allowed counsel to make standing objections on the record because it had not yet ruled on various motions in limine. The parties raised two main objections. First, the city challenged all testimony concerning the recreation easement, contending the litigation had nothing to do with the homeowners' recreational use of the pond. In the same vein, the city contended the homeowners lacked standing because, aside from the recreation easement, the homeowners had no interest in the detention basin. In opposition, the homeowners argued the recreation easement was relevant because it established their standing to bring the action.

Second, Thunder Ridge West challenged all testimony regarding the 2010 ordinance and 2009 manual. The city adopted the ordinance, titled "Post-Construction Stormwater Control," under a federally mandated permit program regulating discharge of storm water runoff. Thunder Ridge West argued it would be improper to scrutinize the homeowners' claim for specific performance under an ordinance that generally did not apply to pre-existing detention basins.[8]

---

[8] A city ordinance governing storm water detention standards did exist in 1999. But the city did not locate it until the second day of trial. Claiming unfair surprise, the homeowners' counsel objected to admission of the 1999 ordinance and testimony discussing it. The court agreed and excluded any reference to that ordinance. But it did allow testimony relating to common practices and standards well-known to city engineers on detention basins.

The court revisited those two preliminary issues in its final ruling. As to standing, the court acknowledged the homeowners were not parties to any easement agreement. But the court decided the homeowners were entitled to relief as "incidental beneficiaries," finding they had "obviously obtained a benefit from the easements." As to the 2010 ordinance, the court sided with the homeowners again, determining the ordinance applied retroactively to remedy threats to public safety. Despite handing them victories on those preliminary issues, the court denied the homeowners relief. The court held: "The city engineer has exercised the discretion given to him and determined that additional maintenance on the detention basin is not required."

The homeowners appealed and the city and Thunder Ridge West cross-appealed from the rulings adverse to their positions at the trial.

## II. Scope and Standards of Review

We generally review de novo an action for specific performance of a contract. Iowa R. App. P. 6.907; *H & W Motor Exp. v. Christ*, 516 N.W.2d 912, 913–14 (Iowa Ct. App. 1994) (explaining specific performance is an equitable remedy that "rests in the sound discretion of the court"). But because the homeowners brought their contract action at law, we review for correction of legal error. *See RPC Liquidation v. Iowa Dep't of Transp.*, 717 N.W.2d 317, 319 (Iowa 2006). Under this review, we are bound by the district court's "well-supported findings of fact, but [we] are not bound by the legal conclusions." *Am. Family Mut. Ins. Co. v. Peterson*, 679 N.W.2d 571, 575 (Iowa 2004). We also review determinations of standing for errors at law. *See Dickey v. Iowa Ethics & Campaign Disclosure Bd.*, 943 N.W.2d 34, 37 (Iowa 2020).

### III.    Third-Party Beneficiaries Under Easement Agreements

We start with the threshold issue raised in the city's cross-appeal: Do the homeowners have standing to enforce the maintenance obligations under the storm water easement agreement?  The city says no, arguing the homeowners cannot enforce a contract to which they are neither parties nor intended third-party beneficiaries.  According to the city, the homeowners are, at most, incidental beneficiaries with no real interest in the easement agreement.  On that point, the city argues: "Merely abutting the basin is not sufficient to confer third-party beneficiary status upon the homeowners even with the assumption that they enjoyed some benefit."

To counter, the homeowners contend they have standing as third-party beneficiaries, claiming "the very purpose" of the detention basin is to protect their properties from flooding and water quality concerns.  They argue they should be able to enforce the easement agreement because they are the individuals "immediately impacted by the lack of contractually required maintenance."

Our analysis begins with the framework in section 302 of the Restatement (Second) of Contracts (Am. Law Inst. 1981).  Our supreme court adopted this approach in *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988), applying section 302 to all third-party beneficiary cases.  That section provides:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302. Section 302 distinguishes between "incidental" and "intended" beneficiaries. *Id.* § 302 cmt. a. The key difference between an incidental beneficiary and an intended beneficiary is the duty owed to the third party by the contracting parties. *Id.* § 302 cmt. e ("Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary as here defined, *no duty to him is created.*" (emphasis added)). Sometimes termed the "intent to benefit" test, the main consideration under the Restatement (Second) approach "is whether the contract manifests an intent to benefit a third party." *Midwest Dredging Co.*, 424 N.W.2d at 224. In section 302 cases, "the intent of the promisee is generally considered controlling." *Id.* (citations omitted). "In determining such intent, we look to the language of the contract and to the circumstances surrounding it." *RPC Liquidation*, 717 N.W.2d at 320.

Applying these principles, we find the district court mistakenly held the homeowners had standing as "incidental" beneficiaries. The court stated: "Plaintiffs are not parties to either [the storm water detention or recreation] easement agreements but as landowners abutting the storm water drainage and detention facility at issue in this matter, they have obviously obtained a benefit from the easements . . . ." The court then cited section 133 of the Restatement (First) of Contracts as supporting authority. That citation is not the main problem. While our supreme court follows the Restatement (Second) approach in third-party beneficiary cases, it has not wholly abandoned the rationale of the Restatement

(First).  *See Midwest Dredging Co.*, 424 N.W.2d at 224 (finding prior Restatement framework "still instructional" because section 302 and section 133 approaches "were substantially compatible").  Both Restatements focus on the intent of the contracting parties, rather than the benefit received.  Thus the district court overlooked the importance of "intent" in its analysis.

On appeal, the parties agree that standing exists only for intended beneficiaries.  *Khabbaz*, 319 N.W.2d at 284 ("[I]n order to have standing to assert a breach a contract, a party not privy to such contract must be regarded as a direct beneficiary to the contract, and not as an incidental beneficiary." (alteration in original) (quoting *Peter Kiewit Son's Co. v. Iowa S. Utils. Co.*, 355 F. Supp. 376, 392 (S.D. Iowa 1973))).  So the homeowners' standing boils down to this question: Are they the *intended* third-party beneficiaries of the storm water easement agreement who can compel performance of the contracting parties?

In urging the contracting parties did not intend to provide a benefit to these homeowners, the city relies on *Uhl v. City of Sioux City*, 490 N.W.2d 69 (Iowa Ct. App. 1992).  The Uhls owned a farm bisected by a highway bypass project.  *Id.* at 71.  Because the bypass would cut off access to the highway, the city and state highway commission executed an agreement requiring the city to construct a local road under the highway "between Stations 614 and 635" within five years of completion of the project.  *Id.*  The agreement did not specify who would benefit from that road.  But the Uhls' land stretched from Station 624 to Station 635, so they anticipated benefitting from the promised road.  *Id.*  When the city took no steps to construct the road, the Uhls sued the city and highway commission for

damages, claiming they were "the intended third-party beneficiaries to the written agreement." *Id.*

This court rejected that claim. We held the Uhls did not "carry the burden of showing the agreement was made for their express benefit" by merely owning property surrounding the planned location of the promised road. *Id.* at 73. Examining the agreement itself, we explained: "There is no language . . . which can be construed to reasonably show an intent on the part of the [highway commission] and the City to confer a direct benefit to them." Because "the agreement was reached with the intent to benefit the general public, *not a specific landowner*," we determined "that at most the Uhls [were] incidental beneficiaries." *Id.* (emphasis added).

Like the Uhls, the homeowners here have not met their burden to show that the city and Thunder Ridge West entered the storm water easement agreement for their express benefit. *See Khabbaz*, 319 N.W.2d at 285. No language in the storm water easement agreement manifests an intent that people who own houses abutting the wet basin obtain a legal right to enforce the maintenance provisions. Rather, the city and Thunder Ridge West reached the easement agreement for the benefit of the general public that could be affected by "the water runoff from said shopping center development," not for any specific landowners. *See Uhl*, 490 N.W.2d at 73.

We also recognize that the intent of the promisee generally controls. *See Midwest Dredging Co.*, 424 N.W.2d at 224. As promisee under the storm water easement agreement, the city did not evince an intent that Thunder Ridge West would maintain the water quality in the storm water detention basin in line with the

expectation of the neighboring homeowners. Rather, the record shows that at the time of contracting, the city and Thunder Ridge West worried about localized flooding caused by uncontrolled storm water runoff. Contrary to the homeowners' claims, nothing in the easement agreement suggests the city "directly or primarily" intended to protect Ridges Park homeowners when it contracted with Thunder Ridge West to construct and maintain a detention basin. *Olney v. Hutt*, 105 N.W.2d 515, 518 (Iowa 1960). The homeowners claim they are "in immediate health danger due to the blue-green algae" in the pond and their "property values have been negatively impacted." But harms of that nature fall outside the scope of the storm water easement agreement.

In their reply brief, the homeowners argue because they are the intended beneficiaries of the recreation easement as members of Ridges Park, they must also be the intended beneficiaries of the storm water easement agreement. Similarly in the district court proceedings, the homeowners relied solely on the recreation easement to establish standing. But during oral argument on appeal, the homeowners contended the storm water easement agreement alone conferred their status as intended third-party beneficiaries.

Despite the homeowners' contentions, we find neither the storm water detention easement nor the recreation easement confers them standing. Throughout the trial, the homeowners insisted their claims were unrelated to recreation or beautification purposes. Because the express benefit in the recreation easement serves only those purposes, the homeowners cannot piggyback on that agreement between Thunder Ridge West and Ridges Park to obtain the right to enforce the maintenance provisions in the separate storm water

easement agreement. And as we have determined, the storm water easement agreement on its own reflects no intent to confer an express benefit to these homeowners.

In reaching our determination, we do not rule out the prospect that under different circumstances a third party might have standing to enforce the storm water easement agreement. For example, illustration 10 under section 302 of the Restatement (Second) of Contracts provides:

> A, the operator of a chicken processing and fertilizer plant, contracts with B, a municipality, to use B's sewage system. With the purpose of preventing harm to landowners downstream from its system, B obtains from A a promise to remove specified types of waste from its deposits in the system. C, a downstream landowner, is an intended beneficiary under Subsection (1)(b).

Our decision today leaves open the possibility that certain landowners could seek enforcement of the maintenance obligations if the harm they suffered is the actual harm anticipated under the easement agreement. In other words, because the primary purpose of the storm water easement is to avoid localized flooding events, an action brought by a homeowner involving a flooding incident would present a closer case. But because the homeowners here did not suffer the harm contemplated by the city and Thunder Ridge West in creating the easement in 1997, they do not fall into the category of intended third-party beneficiaries. We thus find the homeowners did not have standing to seek specific performance. We affirm the district court's ruling on that basis and do not reach the other issues raised on appeal and cross-appeal.

**AFFIRMED.**